OPINION OF THE COURT
Robert Roberto, Jr., J.
The defendant, Babcock Wire Equipment Ltd. (BWE), presently moves to dismiss the complaint on the following grounds: (a) pursuant to CPLR 3211 (a) (3) and (7) in that Davidson Extruded Products, Inc. (DEP) does not have legal capacity to sue, and the complaint fails to state a cause of action; (b) pursuant to CPLR 3211 (a) (8) in that this court lacks in personam jurisdiction of the defendant and, finally, (c) that any disputes between the parties are subject to arbitration in England and therefore the action should be stayed pursuant to CPLR 7503.
The within action involves a classic example of "the battle of the forms”. At issue is which party’s "form”, relative to the sale of the equipment in question, is controlling.
The defendant is an English company with offices and a factory located in Ashford, England. It is engaged in the design and manufacture of various industrial machines and equipment. One such piece of equipment is the "conform” extrusion machine which is the subject of the within action. The defendant does not maintain any offices in the United States, has no employees here, is not licensed to do business in New York nor does it maintain any bank accounts or other assets in New York.
The relationship between the parties was initiated by Thomas Branski, a plant manager for Kaiser Aluminum & Chemical Sales, Inc. (for whom Davidson Aluminum and Metal Corp., DEP’s parent company, was a distributor). Mr. Branski wrote to BWE requesting information regarding the production capabilities of BWE’s equipment.
Davidson Extrusions, Inc., a subsidiary of Davidson Aluminum and Metal Corp. (DAM), was formed and eventually acquired the Kaiser Production facilities on Long Island and Mr. Branski became an employee of Davidson Extrusions, Inc. (DEI).
The defendant forwarded sales literature to Mr. Branski which set forth production specifications for the "conform” machine manufactured by BWE.
Thereafter a letter dated July 15, 1983 from DEI to defen *120 dant’s independent sales representative in the United States, Taylor Metalurgical Ltd., was sent, which expressed DEI’s intention to purchase the "conform” machine. Following this letter, Albert Davidson, the president of DAM, DEI and DEP, traveled to England in order to personally inspect the defendant’s manufacturing plant and witness a demonstration of the "conform” machine. Upon his return from England there began an exchange of forms by the parties relative to the purchase of "conform” machine.
For the purpose of clarity and simplicity the court will refer to various subsidiaries and the parent company as Davidson.
BWE began the exchange by forwarding a price list, which was followed by Davidson’s purchase order No. M98808 dated September 30, 1983. This purchase order set forth that "the terms set forth on this purchase order shall constitute the entire agreement”. The defendant was unable to provide a "conform” machine out of its inventory which existed at that time but did acknowledge the purchase order in its letter of October 3, 1983. This letter contained BWE’s conditions of contract. On January 20 of 1984 the defendant sent Davidson a letter of tender for an available "conform” machine which again reflected BWE’s conditions of contract. These conditions in part provided for arbitration in London and that the contract shall be governed by English law.
The machine was delivered in early February of 1984 to the Woodbury, New York, plant. This machine was eventually impounded by Kaiser as a result of an alleged default on the part of Davidson on notes used to purchase the Kaiser plant in Woodbury, New York.
A second "conform” machine was then ordered by another subsidiary of Davidson, Industry Court Realty Corp. (Industry Court), which was reflected in purchase order No. M10082 dated May 1, 1984. This purchase order refers to the terms and conditions of BWE’s January 20, 1984 tender offer. BWE again confirmed the purchase order by cover letter dated August 8, 1984 which once more specifically refers to BWE’s conditions of contract accompanying the letter. These conditions of contract contained the same arbitration clause and choice of law clause. The second machine was subsequently shipped to Industry Court.
The plaintiff’s action is based upon an alleged failure of the "conform” machine to perform as represented. The complaint sets forth several different causes of action including fraud, breach of warranty and negligence.
*121 The first issue for this court to determine is whether or not in personam jurisdiction over the defendant has been acquired. If the court determines this issue in the negative, it need not face the issue of whether the exchange of the parties’ preprinted forms has resulted in a binding contract and what terms are controlling.
The basis for asserting jurisdiction over BWE is to be found in either CPLR 301 which embodies the traditional common-law concept of "doing business” in this State; or CPLR 302 (a) (1) which is this State’s "long-arm” statute and permits jurisdiction to be asserted when the nondomiciliary "transacts any business within the state or contracts anywhere to supply goods or services in the state”.
It is clear to this court that the plaintiff must rely upon CPLR 302 (a) (1) to acquire jurisdiction since the case law governing the concept of "doing business” in this State and CPLR 301, when applied to the facts of this case, does not support a finding that BWE was "doing business” in this State. (Laufer v Ostrow, 55 NY2d 305; McGowan v Smith, 52 NY2d 268; Frummer v Hilton Hotels Intl., 19 NY2d 533.)
New York’s "long-arm” statute was amended in 1979 to specifically encompass a fact pattern as is presently before the court. The purpose of said amendment was to abrogate the "mere shipment” rule which had previously existed by virtue of case law and to extend New York’s "long-arm” jurisdiction to its constitutional limits. (Cooperstein v Pan-Oceanic Mar., 124 AD2d 632; Island Wholesale Wood Supplies v Blanchard Indus., 101 AD2d 878.)
The court finds that the plaintiff has acquired in personam jurisdiction over BWE pursuant to CPLR 302 (a) (1) since BWE did unquestionably contract to supply goods in this State. (Cooperstein v Pan-Oceanic Mar., supra; Island Wholesale Wood Supplies v Blanchard Indus., supra.) Having found in personam jurisdiction, the court shall now examine the issues relating to the so-called "battle of the forms”.
The two key items in the forms which are in dispute áre contained in BWE’s conditions of contract and relate to the choice of law clause which provides that English law shall govern disputes and the arbitration clause, which provides that disputes shall be submitted to arbitration in London.
In determining these issues the court must look to UCC 2-207 which offers some guidance to this court in a factual *122 situation such as this. UCC 2-207 in pertinent part states as follows:
"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
"(a) the offer expressly limits acceptance to the terms of the offer;
"(b) they materially alter it; or
"(c) notification of objection to them has already been given or is given within a reasonable time after notice is received”.
The parties to this lawsuit are unquestionably merchants and therefore UCC 2-207 (2) is applicable; specifically, paragraphs (a) and (b).
The preprinted terms contained in Davidson’s purchase order state in paragraph 1 that: "This offer is subject to withdrawal at any time prior to communication of acceptance to Purchaser. Upon such acceptance the terms set forth on this purchase order shall constitute the entire agreement relating to the purchase of the goods ordered on the face hereof and shipment or delivery of said goods by Seller shall be deemed to be acceptance of said terms in their entirety. Seller is hereby notified of Purchaser’s objection to any terms inconsistent herewith and to any additional terms proposed by Seller in accepting or acknowledging this order and such terms shall not become a part of this agreement unless accepted in writing by Purchaser. Neither Purchaser’s subsequent lack of objection to any such terms nor the acceptance of goods ordered hereby shall constitute or be deemed an agreement by Purchaser to any such terms”.
Davidson’s preprinted terms also provide in paragraph 7 that: "Purchaser’s rights and remedies shall be as provided by law or as otherwise provided herein and shall in no event be limited by terms proposed by Seller or subject to arbitration.”
The court finds that the arbitration clause provided in BWE’s preprinted conditions of sale contained in the confirmations of sale is a term which does "materially alter” the contract within the meaning of UCC 2-207 and is therefore *123 not binding upon Davidson. (Matter of Marlene Indus. Corp. v Carnal Textiles, 45 NY2d 327; Supak & Sons Mfg. Co. v Pervel Indus., 593 F2d 135; Lea Tai Textile Co. v Manning Fabrics, 411 F Supp 1404.)
Likewise BWE’s choice of law clause, which provided that the contract was to be governed by English law, also materially altered the contract and since it was not specifically agreed to by Davidson, it is not binding upon Davidson. (Pacamor Bearings v Molon Motors & Coil, 102 AD2d 355.)
Based upon the foregoing, that portion of BWE’s motion which seeks to stay the action pursuant to CPLR 7503 upon the grounds that the parties agreed to arbitrate any dispute and to be bound by English law is denied.
Finally, that portion of BWE’s motion that seeks dismissal upon the ground that plaintiff lacks standing to sue since the contract in question was between BWE and the subsidiary Industry Court is denied and the cross motion to permit plaintiff to amend the complaint to add Industry Court and Davidson Aluminum and Metal Corp., the parent company of DEP, is granted.