**STEMCOR USA, INC., Petitioner,**

v.

**TRIDENT STEEL CORPORATION, Respondent.**

**No. 06 Civ. 585(JGK).**

United States District Court, S.D. New York.

Oct. 25, 2006.

Alex Sauchik, Andrew N. Krinsky, Sauchik Alec, Tarter, Krinsky & Drogin, L.L.P. New York, NY, for plaintiffs.

Daniel J. Kasprzak, Johnson Deluca Kennedy & Kurisky, P.C., Houston, TX, Peter A. Cross, Wendy C. Michael, Jacob, Medinger & Finnegan LLP, New York, NY, for defendant.

### OPINION AND ORDER

KOELTL, District Judge.

The petitioner, Stemcor USA, Inc. ("Stemcor"), filed a petition to compel arbitration under Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. Stemcor also moved for a preliminary injunction to stay three third-party actions filed against it by the respondent,

Trident Steel Corporation ("Trident"), that are pending in the state courts of Texas. The parties agreed at a hearing on March 10, 2006 that the preliminary injunction motion and the underlying petition could be consolidated after supplemental briefing.

The Court today dispenses with both actions by **denying** Stemcor's petition to compel arbitration.

## I.

The disputes at issue in the Texas actions arose out of Stemcor's sale of steel products to Trident between October 2000 and April 2002. During that period, the two companies entered into a series of twelve sales agreements for steel casings, or hollow steel pipe. Pursuant to those sales agreements, Stemcor delivered steel casings to Trident.

The parties do not dispute that their sales agreements constituted valid contracts. Trident initiated each purchase by sending to Stemcor a purchase order including the basic specifications of the steel casings desired. Each of Trident's purchase order forms included the following clause:

> 1. No terms or conditions, other than those stated herein, and no agreement or understanding in any way modifying the terms and conditions herein stated shall be binding upon purchaser, unless mutually agreed upon in writing.

(Ex. A to Decl. of Wendy C. Michael, Feb. 14, 2006.)

In response to Trident's purchase orders, Stemcor sent two subsequent documents to Trident: an acknowledgement form, alternately labeled a "Sales Contract" or a "Sale Note," sent prior to delivery of the goods, and a "Sales Invoice," sent following the delivery of goods. Each acknowledgement form included the following paragraph:

> This contract is made between the buyer and the seller whereby the buyer agrees to buy and the seller agrees to sell the undermentioned goods subject to the terms and conditions as stipulated hereafter. This contract reflects in its entirety all details as agreed between the parties thereto. Any changes must be in writing and accepted by both parties. Any contract disputes are to be resolved through friendly negotiations. If no settlement can be reached then either party may submit the dispute to arbitration as per the rules of the American Arbitration Association in New York.

(Ex. A to Aff. of Alec Sauchik, Jan. 24, 2006.) Some of the acknowledgement forms also altered other terms contained in Trident's purchase orders, including changes in the length of the payment term and minor variations in the price and the amount of steel casing to be delivered. (*Compare* Ex. A to Aff. of Gary Boral, Mar. 20, 2006, *with* Ex. A to Sauchik Aff.)

After sending each acknowledgement form to Trident, Stemcor delivered the requested steel casings to Trident at Houston, Texas. (*See* Pet. To Compel Arbitration, for Stay and for Injunctive Relief ¶ 6; Demand for Arbitration ¶¶ 6, 11–12, Ex. B to Sauchik Aff.) Trident accepted each delivery of casings, but it failed to pay Stemcor $144,690.74 of the amount due under various invoices. (Pet. To Compel Arbitration ¶¶ 6, 7; *see also* Exs. C, D, E to Demand for Arbitration, attached as Ex. B to Sauchik Aff.)

After it received the steel casings, Trident modified them by threading the ends and in turn re-sold them to a number of companies that operate oil wells. (Pet. to Compel Arbitration ¶ 7.) Three of those oil well operators brought suit against Trident in Texas state courts alleging that the

steel casings were defective, resulting in the cases *J–W Operating Co. v. Trident Steel Corp.*, No. 04–10235, in the C–68th Judicial District Court of Dallas County, *Trident Steel Corp. v. Eagle Oil & Gas Co.*, No.2003–20285–158, in the 158th Judicial District Court of Denton County, and *R.L. Adkins Corp. v. Trident Steel Corp.*, No.2004–301350211, in the 211th District Court of Denton County. In each of these three actions, the oil well operators asserted claims against Trident alleging that the steel casings delivered by Trident were defective, and in each case Trident filed a third-party complaint against Stemcor seeking indemnification for any damages it might owe to the oil well operators. (*See* Petition to Compel Arbitration ¶¶ 8–17.)

The *J–W Operating Co.* case has settled. (Hr'g Tr. 13:8–13, Mar. 10, 2006.) In *Eagle Oil & Gas*, Stemcor filed a motion to compel arbitration and to stay proceedings with respect to its involvement in the case in September of 2004. No order has issued to date with respect to that motion. Stemcor has not filed a motion to compel arbitration in the *R.L. Adkins* case, and that action is still pending.

On December 15, 2005, Stemcor filed a demand for arbitration with the American Arbitration Association ("AAA"), claiming that Trident was bound to arbitrate any disputes arising out of the sales agreements. (Demand for Arbitration ¶¶ 48–53, Ex. B to Sauchik Aff.) Trident's answer to the demand for arbitration, filed with the AAA on January 16, 2006, asserted that the AAA was without jurisdiction to arbitrate the disputes because no valid agreement to arbitrate existed between Stemcor and Trident. (Resp.'s Original Answer ¶¶ 1–2, Ex. C to Sauchik Aff.; *see also* Resp.'s Mot. to Dismiss for Want of Jurisdiction, Ex. D to Sauchik Aff.) The parties agreed to place the matter before the AAA in abeyance. (Ex. M to Michael Decl.)

Stemcor initiated this action by filing its petition to compel arbitration and for injunctive relief on January 24, 2006.

## II.

### A.

Federal courts, in ruling on a petition to compel arbitration under the FAA, are to determine "two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected, or refused to arbitrate." *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996). It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to submit to arbitration any matter that party has not agreed to arbitrate. *E.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir.2003). Whether a valid agreement exists to submit certain issues to binding arbitration is determined by state law principles governing the formation of contracts. *Shaw Group*, 322 F.3d at 120 (citing *First Options*, 514 U.S. at 944, 115 S.Ct. 1920); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). In applying those state law principles, however, the FAA requires that arbitration agreements be treated no more harshly than other contractual provisions. *See Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295–96 (2d Cir.1999) ("Thus, we have stated that ... § 2 of the FAA preempts state law that treats arbitration agreements differently from any other contracts...."); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir.1993) (quoting *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)) ("A state law principle that takes its meaning precisely

from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2.").

### B.

■ In this case, there is no dispute that Stemcor and Trident entered into a series of binding sales contracts, and the parties agree that those contracts are governed by New York law,[1] and in particular by the Uniform Commercial Code ("UCC") as adopted by New York. The parties do not, however, agree on the answer to the central question under the FAA analysis: whether those contracts included an agreement to submit disputes between Stemcor and Trident to arbitration. An arbitration clause appears in the acknowledgement forms Stemcor used to confirm Trident's orders, but not in Trident's purchase orders. Trident contends that its purchase orders constituted offers, and that Stemcor's acknowledgement forms constituted acceptances of those offers. Stemcor argues that its acknowledgement forms were not acceptances of Trident's offers, but were instead counter-offers that Trident accepted by performance when it took delivery of the steel casings.

Under New York law, section 2–207 of the UCC governs the formation of contracts when the terms of the parties' writings are not identical. This provision was adopted to alter the common law rule requiring perfect symmetry between the terms of an offer and an acceptance and to resolve the "battle of the forms" problem in a way that better conforms to modern business practices. *See* N.Y. U.C.C. § 2–207, cmts. 1–2; *Rite Fabrics, Inc. v. Staf-*

*ford–Higgins Co.,* 366 F.Supp. 1, 6–7 (S.D.N.Y.1973). Section 2–207 provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

N.Y. U.C.C. § 2–207.

Under paragraph (1) of section 2–207, a seller's form response to a buyer's purchase order normally constitutes a "definite and seasonable expression of acceptance" if it repeats the terms of the buyer's order. *Rite Fabrics,* 366 F.Supp.

---

**1.** Where the parties agree that New York law applies, the Court may credit that agreement. *See, e.g., Cofacrèdit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 239 n. 4 (2d Cir.1999); *Tehran–Berkeley Civil & Envtl.*

*Eng'rs v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989). In any event, because both New York and Texas have adopted the UCC, the law of New York and Texas is the same on the issues in this case.

at 8. According to the proviso at the end of paragraph (1), if the seller's response does not state that acceptance is "expressly made conditional" on the buyer's assent to additional terms the seller included, that response operates as an acceptance and a contract is formed. *E.g., Bayway Ref. Co. v. Oxygenated Mktg. & Trading, A.G.*, 215 F.3d 219, 223 (2d Cir. 2000); *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 53 (1st Cir.1999); *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir.1972); *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239, 241 & n. 2 (1978); *CBS, Inc. v. Auburn Plastics, Inc.*, 67 A.D.2d 811, 413 N.Y.S.2d 50, 51 (App.Div.1979). When a contract is formed under paragraph (1), paragraph (2) applies to determine whether the additional or different terms become part of the contract. *Bayway Ref.*, 215 F.3d at 223; *JOM*, 193 F.3d at 53; *Dorton*, 453 F.2d at 1166; *Marlene Indus.*, 408 N.Y.S.2d 410, 380 N.E.2d at 241; *CBS*, 413 N.Y.S.2d at 51.

If, however, the seller's response is "expressly made conditional on assent" to the divergent terms, then the proviso in paragraph (1) provides that no contract is formed, and instead the seller's response constitutes a counter-offer. *JOM*, 193 F.3d at 53; *Dorton*, 453 F.2d at 1166. "[T]o be deemed 'expressly conditional,' the seller's invoice must place the buyer on unambiguous notice that the invoice is a mere counteroffer." *JOM*, 193 F.3d at 53; *see also Dorton*, 453 F.2d at 1168 (quoting *Webster's Third International Dictionary* definition of "express") ("That the acceptance is predicated on the offeror's assent must be 'directly and distinctly stated or expressed rather than implied or left to inference.'"). When the paragraph (1) proviso applies to prevent contract formation, the parties' conduct may nonetheless recognize the existence of a contract, and

in that case paragraph (3) of section 2–207 defines the terms of the agreement as those upon which the parties agree together with any supplemental default terms provided elsewhere in the U.C.C. N.Y. U.C.C. § 2–207(3) & cmt. 7; *see also JOM*, 193 F.3d at 54.

Stemcor argues that its acknowledgement forms were "expressly made conditional on assent" to their additional terms, including the arbitration clause, and thus that they could not have operated as acceptances under section 2–207(1). Stemcor asserts that its acknowledgement forms therefore constituted counter-offers, which were subsequently accepted by Trident's performance. Stemcor does not, however, point to specific language indicating unambiguously that its sales were "expressly made conditional on assent" to its additional terms. The following two sentences from Stemcor's forms are the only likely candidates for Stemcor's alleged "express" condition:

> This contract reflects in its entirety all details as agreed between the parties thereto. Any changes must be in writing and accepted by both parties.

But these sentences merely purport to characterize the acknowledgement forms as final versions of an agreement that the parties had already reached, rather than expressly requiring assent to additional terms. Stemcor's acknowledgement forms thus were not "expressly made conditional" on assent to their additional terms, and in particular to the arbitration clause they included.

This finding is consistent with decisions of other courts that have determined whether a responsive form contained a sufficient "express condition" to avoid operating as an acceptance. The language in Stemcor's acknowledgements differs markedly from the express language that courts

have found sufficient to establish an "express condition." In *C. Itoh & Co. v. Jordan Int'l Co.*, for example, a seller of steel coils replied to a buyer's purchase order with an acknowledgement form including the following statement, along with an added arbitration provision:

> Seller's acceptance is, however, *expressly conditional on Buyer's assent* to the additional or different terms and conditions set forth below and printed on the reverse side. If the terms and conditions are not acceptable, Buyer should notify seller at once.

552 F.2d at 1230 (emphasis added). The Court of Appeals for the Seventh Circuit found that because the seller's condition tracked the language of section 2–207(1) precisely, it prevented the seller's form from operating as an acceptance. *Id.* at 1235–36; *see also PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 979 (8th Cir.2000) ("[A]n acceptance which precisely follows § 2–207(1) clearly forestalls contract formation."). Similarly, in *American Tempering, Inc. v. Craft Architectural Metals Corp.*, a seller of construction glass responded to a buyer's purchase order with a confirmation including the language:

> If the terms and conditions of this acknowledgment differ in any way from the terms and conditions of the purchaser's order the acknowledgment shall be construed as a counter offer and shall not be effective as an acceptance of such order unless the purchaser assents to the terms and conditions herein which shall constitute the entire agreement between the parties.

107 A.D.2d 565, 483 N.Y.S.2d 304, 305 (App.Div.1985). Because the seller's form did not agree with the buyer's inclusion of a one-year limitations period, and because the seller's form was "specifically conditioned" on acceptance of its terms, the court construed the seller's confirmation as a counter-offer rather than an operative acceptance under section 2–207(1). *Id.* at 305.

In contrast, in *CBS, Inc. v. Auburn Plastics, Inc.*, a manufacturer of cavity molds used to make toys responded to a customer's purchase orders with acknowledgements repeating essentially the same terms as contained in the purchase orders but also stating "[t]his sale subject to the terms and conditions of our quotation pertinent to this sale." 413 N.Y.S.2d at 51. This clause purported to incorporate by reference an earlier price quotation, which included in its terms an additional charge for delivery of the molds. *See id.* at 50–51. Despite the "subject to" language which attempted to incorporate conflicting terms, the Appellate Division held that the seller's acknowledgements "are nonetheless operable as acceptances since they are not expressly made conditional on [the buyer's] assent to the different terms." *Id.* at 51.

Similarly, the seller in the *Dorton* case responded to a buyer's oral orders with written acknowledgements stating that the orders were "subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer." 453 F.2d at 1167. The Court of Appeals for the Sixth Circuit read the section 2–207(1) proviso strictly, holding that "[a]lthough [the seller's] use of the words 'subject to' suggests that the acceptances were conditional to some extent, we do not believe the acceptances were 'expressly made conditional on [the buyer's] assent to the additional or different terms.'" *Id.* at 1168.

■ The boilerplate language Stemcor included in its acknowledgement forms is more analogous to the attempts to characterize a writing as the final expression of terms in *CBS* and *Dorton* than to the

clear, explicitly conditional language used in *Itoh* and *American Tempering*. Hence the proviso discussed above does not apply, and Stemcor's acknowledgement forms operated as acceptances under section 2–207(1).[2]

■ Because Stemcor's responsive forms did form a contract under section 2–207(1) despite proposing additional terms, section 2–207(2) applies to determine whether those additional terms became part of the contract. Section 2–207(2) provides that when both the buyer and seller are merchants, the proposed additional terms become binding unless any one of three exceptions applies. The first exception, which is relevant here, excludes additional terms when "the offer expressly limits its acceptance to the terms of the offer." N.Y. U.C.C. § 2–207(2)(a).

In each of its purchase orders, Trident included the clause: "No terms or conditions, other than those stated herein, and no agreement or understanding in any way modifying the terms and conditions herein stated shall be binding upon purchaser, unless mutually agreed upon in writing." This clause contains clear language ex-pressly limiting acceptance to the terms contained in the purchase order. Stemcor's acknowledgement forms thus could not unilaterally impose additional terms without Trident's written assent. *See Tri-State Petroleum Corp. v. Saber Energy, Inc.*, 845 F.2d 575, 578–79 (5th Cir.1988) (applying Texas UCC); *Great Am. Ins. Co. v. M/V Handy Laker*, No. 96 Civ. 8737, 2002 WL 32191640, at *6 (S.D.N.Y.2002); *Tunis Mfg. v. Mystic Mills, Inc.*, 40 A.D.2d 664, 337 N.Y.S.2d 150, 151 (App. Div.1972) (per curiam); *cf. Davidson Extruded Prods, Inc. v. Babcock Wire Equip. Ltd.*, 138 Misc.2d 118, 523 N.Y.S.2d 338, 341 (Sup.Ct.1987) (applying 2–207(2)(b) but noting relevance of 2–207(a)).

■ Stemcor argues that its arbitration clause was not a "material alteration" and hence should not be excluded from the agreement. N.Y. U.C.C. 2–207(2)(b); *see also Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 99–100 (2d Cir.2002). This argument addresses the applicability of section 2–207(2)(b), but fails to account for the independent exception in 2–207(2)(a), discussed above. The

---

**2.** It should be noted that even if Stemcor's forms constituted counter-offers as it has argued, Stemcor could not succeed in incorporating its arbitration clause into the contract. Where, as here, the conduct of the parties indicates that a contract was formed, but the parties' writings do not themselves form the contract, section 2–207(3) applies to provide the terms of the agreement. N.Y. U.C.C. § 2–207(3) & cmt. 7. The parties' writings do not agree on the arbitration clause, and it does not fall under any default provision of the UCC, so section 2–207(3) would exclude the arbitration clause. Stemcor's arguments that its forms included some different terms regarding the price and specifications for the steel casings ordered and that Trident never objected to these variations upon delivery are unhelpful, because Trident's conduct in accepting the goods only evidences the formation of a contract and Trident's agreement to certain undisputed terms.

Stemcor cites *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440 (9th Cir.1986), and *PCS Nitrogen Fertilizer*, 225 F.3d 974, in aid of its argument, but these opinions in fact weigh against Stemcor. In *PCS Nitrogen Fertilizer*, the court noted that "mere acceptance of and payment for goods does not constitute acceptance of all of the terms in the seller's counter-offer," and the court went on to apply 2–207(3) to exclude a disputed arbitration provision. 225 F.3d at 980, 981. The court in *Diamond Fruit Growers* similarly applied 2–207(3) to exclude a disclaimer of liability from a sales contract, finding that to allow the seller to impose its objectionable terms without the buyer's clear assent would reinstate the common law "last shot rule" that section 2–207 was in part designed to eradicate. 794 F.2d at 1444–45.

fact that arbitration agreements may no longer be considered "material" alterations as a matter of law, *Aceros,* 282 F.3d at 100, is thus unavailing for Stemcor.[3]

Stemcor also argues that *Pervel Industries, Inc. v. T M Wallcovering, Inc.,* 871 F.2d 7 (2d Cir.1989), shows that where a seller sends multiple order confirmations containing an arbitration clause over time and the buyer never objects, the arbitration clause is binding. *Id.* at 8. But in *Pervel Industries* the buyer never limited its orders to the terms of its offer, as Trident expressly did, and therefore section 2–207(2)(a) was not applicable. The *Pervel Industries* court's consideration of custom and the parties' course of dealings is relevant to determining whether a term is a "material alteration" under section 2–207(2)(b), but not to the applicability of section 2–207(2)(a). *Pervel Industries* is thus inapposite.

The Court has considered all of Stemcor's remaining arguments and finds each to be without merit in light of the application of UCC section 2–207 described above. The Court thus finds that the contracts between Stemcor and Trident did not incorporate an arbitration provision.

### C.

Because the Court finds that the parties' contracts included no valid arbitration clause, Stemcor's petition to compel arbitration under the FAA is denied.

### CONCLUSION

For all of the foregoing reasons, Stemcor's petition to compel arbitration is **denied**. Because there is no agreement to arbitrate, Stemcor's outstanding application for preliminary injunction is also **de-**

**nied.** The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

---

3. Stemcor has cited no case that suggests the "materiality" test for section 2–207(2)(b) has any relevance to the application of section 2–207(2)(a).