**BAYWAY REFINING COMPANY,**
Plaintiff–Appellee,

Tosco Corporation, Plaintiff–Counter–
Defendant–Appellee,

v.

**OXYGENATED MARKETING AND
TRADING A.G., Defendant–Counter–Claimant–Appellant.**

No. 1075, Docket 99–7743.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 2000

Decided June 8, 2000

Jeffrey L. Dorrell, Houston, TX (Donald F. Mooney, C.W. Isley, New York, NY, on the brief), for Defendant–Appellant.

Curtis C. Mechling, Stroock & Stroock & Lavan LLP, New York, N.Y. (Lawrence D. Norden, Robyn Gemeiner, on the brief), for Plaintiff-Appellee.

Before: WINTER, Chief Judge, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Plaintiff-appellee Bayway Refining Company ("Bayway") paid federal excise tax on a petroleum transaction, as the Internal Revenue Code requires a petroleum dealer to do in a sale to a buyer who has not procured an exemption under the applicable tax provision. In this diversity suit against the buyer, Oxygenated Marketing and Trading A.G. ("OMT"), Bayway seeks to recover the amount of the tax it paid. One question in this "battle of the forms" contract case is whether, under N.Y. U.C.C. § 2–207(2)(b) (McKinney 1993), a contract term allocating liability to the

buyer for an excise tax is an additional term presumed to have been accepted (as the seller contends) or (as the buyer contends) a material alteration presumed to have been rejected. The United States District Court for the Southern District of New York (McKenna, *J.*) granted summary judgment in favor of the seller, Bayway.

We conclude that, in the circumstances presented: (i) the party opposing the inclusion of an additional term under § 2–207(2)(b) bears the burden of proving that the term amounts to a material alteration; (ii) the district court properly granted summary judgment in favor of the seller, because the additional term here did not materially alter the contract; and (iii) the district court properly admitted evidence of custom and practice in the industry despite the fact that it was first proffered in the moving party's reply papers. Accordingly, we affirm.

## Background

Bayway and OMT are in the business of buying and selling petroleum products. Bayway contracted to sell to OMT 60,000 barrels of a gasoline blendstock called Methyl Tertiary Butyl Ether ("MTBE"). On February 12, 1998, OMT faxed Bayway a confirmation letter, which operated as the offer, and which stated in pertinent part:

> We are pleased to confirm the details of our purchase from you of MTBE as agreed between Mr. Ben Basil and Roger Ertle on [February 12, 1998.]
>
> . . . . .
>
> This confirmation constitutes the entire contract and represents our understanding of the terms and conditions of our agreement.... Any apparent discrepancies or omissions should be brought to our notice within the next two working days.

Bayway faxed its confirmation to OMT the next day. That document, which operated as the acceptance, stated in pertinent part: "We are pleased to confirm the following verbal agreement concluded on February 12, 1998 with your company. This document cancels and supersedes any correspondence in relation to this transaction." Bayway's acceptance then set forth the parties, price, amount and delivery terms, and undertook to incorporate the company's standard terms:

> Notwithstanding any other provision of this agreement, where not in conflict with the foregoing, the terms and conditions as set forth in Bayway Refining Company's General Terms and Conditions dated March 01, 1994 along with Bayway's Marine Provisions are hereby incorporated in full by reference in this contract.

The Bayway General Terms and Conditions were not transmitted with Bayway's fax, but Paragraph 10 of its General Terms and Conditions states:

> Buyer shall pay seller the amount of any federal, state and local excise, gross receipts, import, motor fuel, superfund and spill taxes and all other federal, state and local taxes however designated, other than taxes on income, paid or incurred by seller directly or indirectly with respect to the oil or product sold hereunder and/or on the value thereof.

This term is referenced as the "Tax Clause."

OMT did not object to Bayway's acceptance or to the incorporation of its General Terms and Conditions (which included the Tax Clause). OMT accepted delivery of the MTBE barrels on March 22, 1998.

The Internal Revenue Code imposes an excise tax, payable by the seller, on the sale of gasoline blendstocks such as MTBE "to any person who is not registered under [26 U.S.C. § 4101]" for a tax exemption. 26 U.S.C.A. § 4081(a)(1)(A)(iv) (West Supp.1999). After delivery, Bayway learned that OMT was not registered with the Internal Revenue Service for the tax exemption. The transaction therefore created a tax liability of $464,035.12, which Bayway paid.

Invoking the Tax Clause, Bayway demanded payment of the $464,035.12 in taxes in addition to the purchase price of the MTBE. OMT denied that it had agreed to assume the tax liability and refused to pay that invoice item. In response, Bayway filed this diversity suit alleging breach of contract by OMT.

Upon Bayway's motion for summary judgment, the district court held that the Tax Clause was properly incorporated into the contract. *See Tosco Corp. v. Oxygenated Mktg. & Trading A.G.*, No. 98 Civ. 4695, 1999 WL 328342, at *3–*6 (S.D.N.Y. May 24, 1999). The fact that Bayway had failed to attach a copy of the General Terms and Conditions was irrelevant because OMT could have obtained a copy if it had asked for one. *See id.* at *3. The court then analyzed the contract-forming documents, applied the "battle of the forms" framework set forth in N.Y. U.C.C. § 2–207(2), and concluded that OMT failed to carry its burden of proving that the Tax Clause materially altered the contract. *See id.* at *3–*6. The court therefore granted summary judgment in favor of Bayway.[1]

## Discussion

On appeal, OMT argues (i) that it succeeded in raising genuine issues of fact as to whether the Tax Clause materially altered the Bayway/OMT contract and (ii) that the evidence of custom and practice in the industry, upon which the grant of summary judgment turns, was improperly admitted.

We review the district court's grant of summary judgment *de novo*. *See Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir.1998). In so doing, this Court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir.1998). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

We affirm for substantially the reasons stated by the district court. We hold—on an issue of first impression in this Court—that in a "battle of the forms" case governed by N.Y. U.C.C. § 2–207(2)(b), the party opposing the inclusion of an additional term bears the burden of proving that the term works a material alteration. Viewing the evidence in the light most favorable to OMT, we conclude that OMT failed to shoulder that burden. Finally, we hold that the district court properly admitted the evidence concerning industry custom and practice.[2]

---

1. The underlying litigation also involved a second MTBE transaction. In June 1998, OMT contracted to sell 35,000 barrels of MTBE to Tosco Refining Company ("Tosco"), Bayway's parent company. Tosco offset the money claimed by Bayway under the Bayway/OMT contract at issue in this appeal. Tosco joined Bayway in its suit against OMT, seeking as alternative relief a declaration that Tosco was entitled to the offset; and OMT counterclaimed. The district court granted summary judgment in favor of OMT, concluding that Tosco had no right of offset under the June 1998 contract. *See Tosco Corp.*, 1999 WL 328342, at *7. Tosco did not appeal that decision, and it is therefore not before this Court.

2. OMT raises two arguments for the first time on appeal. First, OMT argues that Bayway's acceptance was effected by a different confirmation fax, sent by a broker, which did not list or reference additional terms, and that the Tax Clause therefore never became a part of the contract. Second, OMT contends that the third "battle of the forms" exception also applies, because a supposed integration clause contained in OMT's offer constitutes a "notification of objection" to any additional terms contained in the Acceptance. N.Y. U.C.C. § 2–207(2)(c). "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994). We decline to reach these untimely arguments.

## A. Battle of the Forms.

Bayway argued its motion for summary judgment on the basis of New York law, presumably because one of the additional terms incorporated by its acceptance is a New York choice-of-law provision. OMT has accepted New York law as controlling for purposes of Bayway's summary judgment motion.

Under New York law, the rules of engagement for the "battle of the forms" are set out in the Uniform Commercial Code ("U.C.C."), § 2-207:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

N.Y. U.C.C. § 2-207.

It was undisputed in the district court that Bayway's confirmation fax is effective to form a contract as an acceptance—even though it stated or referenced additional terms (including the Tax Clause)—because it was not made expressly conditional on OMT's assent to the additional terms. *See id.* § 2-207(1). Therefore, under § 2-207(2), the Tax Clause is a proposal for an addition to the contract. *See id.* § 2-207(2). The parties are both merchants within the meaning of the U.C.C. *See id.* § 2-104(1), (3). The Tax Clause therefore is presumed to become part of the contract unless one of the three enumerated exceptions applies. *See id.* § 2-207(2). In its defense, OMT invokes the "material alteration" exception of § 2-207(2)(b).

### 1. *Burden of Proof.*

▉▉▉ The allocation of the burden of proof under this exception to § 2-207(2) is a question of New York law, *see United States v. McCombs,* 30 F.3d 310, 323-24 (2d Cir.1994) (holding that, under the *Erie* doctrine, federal courts sitting in diversity apply the forum state's law concerning burdens of proof), and is answered in the text of New York's U.C.C. § 2-207(2). Section 2-207(2)(b) is an exception to the general rule of § 2-207(2) that additional terms become part of a contract between merchants. That general rule is in the nature of a presumption concerning the intent of the contracting parties. Thus if neither party introduced any evidence, the Tax Clause would, by the plain language of § 2-207(2), become part of the contract. To implement that presumption, the burden of proving the materiality of the alteration must fall on the party that opposes inclusion. Accordingly, we hold that under § 2-207(2)(b) the party opposing the inclusion of additional terms shoulders the burden of proof. In so doing, we join almost every court to have considered this issue. *See Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1284 (10th Cir.1997) (describing a "conventional UCC analysis" as placing "the burden of showing that [an additional term] is a material alteration ... on the party opposing its inclusion because section 2-207 presumes inclusion of additional terms between merchants"); *see also, e.g., JOM, Inc. v. Adell Plastics, Inc.,* 193 F.3d 47, 59 (1st Cir.1999); *Comark Merchandising, Inc. v. Highland Group, Inc.,* 932 F.2d 1196, 1201 (7th Cir.1991); *K I C Chems., Inc. v. ADCO Chem. Co.,* No. 95 CIV. 6321, 1996 WL 122420, at *4 (S.D.N.Y. Mar.20, 1996); *Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1245 n. 11 (E.D.Pa.1991); *LTV Energy Prods. Co. v. Northern States Contracting Co. (In re*

**224**

*Chateaugay Corp.)*, 162 B.R. 949, 956 (Bankr.S.D.N.Y.1994); *Palmer G. Lewis Co. v. ARCO Chem. Co.*, 904 P.2d 1221, 1229 (Alaska 1995); *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 850 (Ind.Ct.App.1995); *Eskay Plastics, Ltd. v. Chappell*, 34 Wash.App. 210, 660 P.2d 764, 767 (1983). *But see Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 199 n. 3 (Tex.App.1992).

### 2. *Materiality and* Per Se *Materiality.*

A material alteration is one that would "result in *surprise* or *hardship* if incorporated without express awareness by the other party." N.Y. U.C.C. § 2–207 cmt. 4 (emphasis added).

 Certain additional terms are deemed material as a matter of law. For example, an arbitration clause is *per se* a material alteration in New York because New York law requires an express agreement to commit disputes to arbitration. *See Marlene Indus. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 413, 380 N.E.2d 239 (1978); *see also* N.Y. U.C.C. § 2–207 cmt. 4 (listing as examples of *per se* material alterations, *inter alia*, waivers of warranties of merchantability or fitness for a particular purpose and clauses granting the seller the power to cancel upon the buyer's failure to meet any invoice). OMT characterizes the Tax Clause as a broad-ranging indemnity clause, and analogizes it to these *per se* material alterations. We reject the analogy. The Tax Clause allocates responsibility for the tax payable on a specific sale of goods. *See Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1335, 1337 (7th Cir.1991) (distinguishing between "open-ended" tax liability, which is a material alteration, from "responsibility for tax-

es shown on an individual invoice," which is not). And unlike an arbitration clause, which waives a range of rights that are solicitously protected, the Tax Clause is limited, discrete and the subject of no special protection. Unable to show that the Tax Clause is a material alteration *per se*, OMT must prove that in this case the Tax Clause resulted in surprise or hardship.[3]

### 3. *Surprise.*

 Surprise, within the meaning of the material alteration exception of § 2–207(2)(b), has both the subjective element of what a party actually knew and the objective element of what a party should have known. *See American Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1191 (10th Cir.1992); *In re Chateaugay*, 162 B.R. at 956–57. A profession of surprise and raised eyebrows are not enough: "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). To carry the burden of showing surprise, a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term. *See Union Carbide*, 947 F.2d at 1336.

OMT has adduced evidence that the Tax Clause came as an amazement to OMT's executives, who described the term's incorporation as "contract by ambush" and a "sl[e]ight-of-hand proposal." Thus OMT has sufficiently exhibited its subjective surprise. As to objective surprise, however, OMT has alleged no facts and introduced no evidence to show that a reasonable petroleum merchant would be surprised by the Tax Clause. *See In re*

---

**3.** Even if an additional term that places the tax liability on the opposing party was a material alteration *per se*, New York law allows a party to rebut this conclusion in some limited circumstances with a sufficient showing that the additional term reflects the custom and practice in the particular industry. *See Ave-* *don Eng'g*, 126 F.3d at 1285 & n. 15 (discussing New York law); *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 424 N.Y.S.2d 133, 135, 399 N.E.2d 1154 (1979). As discussed below, Bayway's evidence that the Tax Clause reflects the custom and practice in the petroleum industry is compelling and unrebutted.

*Chateaugay,* 162 B.R. at 957 (including as types of evidence proving objective surprise "the parties' prior course of dealing and the number of written confirmations that they exchanged, industry custom and the conspicuousness of the term"). OMT had no prior contrary course of dealing with Bayway, and offered nothing concerning trade custom or practice.

Ordinarily, our inquiry into surprise would end here. However, in response to OMT's claim of surprise, Bayway introduced evidence that the Tax Clause reflects custom and practice in the petroleum industry, and on appeal OMT argues that Bayway's own evidence raises a genuine issue of material fact as to whether such a trade practice exists. Although the evidence was introduced by Bayway,[4] we are "obligated to search the record and independently determine whether or not a genuine issue of fact exists." *Jiminez v. Dreis & Krump Mfg. Co.,* 736 F.2d 51, 53 (2d Cir.1984) (quoting *Higgins v. Baker,* 309 F.Supp. 635, 639 (S.D.N.Y.1970)) (internal quotation marks omitted).

Upon our review of the evidence, we conclude that Bayway has adduced compelling proof that shifting tax liability to a buyer is the custom and practice in the petroleum industry. Two industry experts offered unchallenged testimony that it is customary for the buyer to pay all the taxes resulting from a petroleum transaction. One expert stated that "[t]his practice is so universally understood among traders in the industry, that I cannot recall an instance, in all my years of trading and overseeing trades, when the buyer refused to pay the seller for excise or sales taxes."

OMT cites the standard contracts of five major petroleum companies that Bayway introduced to illustrate contract terms similar to the Tax Clause. OMT argues that only three of the five place the tax liability on the buyer, and that there is therefore an issue of fact as to whether the Tax Clause would objectively surprise a merchant in this industry.

OMT misconstrues the evidence. Three of the contracts—those of CITGO Petroleum, Conoco, and Enron—mirror the Tax Clause. A fourth, Chevron's, differs from the others only in that the cost of the taxes is added into the contract price rather than separately itemized. Thus Chevron's standard contract affords OMT no support.

The fifth example, the Texaco contract, is silent as to the tax allocation issue in this case. But on this unrebutted record of universal trade custom and practice, silence supports no contrary inference.

Moreover, common sense supports Bayway's evidence of custom and practice. The federal excise tax is imposed when taxable fuels are sold "to any person who is not registered under [26 U.S.C. § 4101]." 26 U.S.C. § 4081(a)(1)(A)(iv). The buyer thereby controls whether any tax liability is incurred in a transaction. A trade practice that reflects a rational allocation of incentives (as trade practices usually do) would place the burden of the tax on the party that is in the position to obviate it—here, on OMT as the buyer.

Viewing Bayway's evidence in the light most favorable to OMT, we conclude that allocating the tax liability to the buyer is the custom and practice in the petroleum industry. OMT could not be objectively surprised by the incorporation of an additional term in the contract that reflects such a practice.

4. Bayway introduced the trade practice evidence to rebut OMT's claim of surprise. Typically, Bayway would bear the burden of establishing the custom and practice in the industry. *See Putnam Rolling Ladder Co. v. Manufacturers Hanover Trust Co.,* 74 N.Y.2d 340, 547 N.Y.S.2d 611, 615, 546 N.E.2d 904 (1989) ("[T]he burden of proving a trade usage has generally been placed on the party benefiting from its existence."). *See generally* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 3–3, at 124 n.52 (4th ed.1995) (collecting cases). This allocation of burden avoids forcing the party claiming objective surprise to prove a negative.

### 4. *Hardship.*

To recapitulate: A material alteration is one that would "result in surprise *or* hardship if incorporated without express awareness by the other party." N.Y. U.C.C. § 2–207 cmt. 4 (emphasis added). Although this Official Comment to the U.C.C. seemingly treats hardship as an independent ground for finding that an alteration is material, courts have expressed doubt: "You cannot walk away from a contract that you can fairly be deemed to have agreed to, merely because performance turns out to be a hardship for you, unless you can squeeze yourself into the impossibility defense or some related doctrine of excuse." *Union Carbide*, 947 F.2d at 1336 ("Hardship is a consequence [of material alteration], not a criterion. (Surprise can be either.)"); *see also, e.g.*, *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F.Supp. 1012, 1017–18 (E.D.N.Y. 1996) (citing *Union Carbide* with approval and limiting the test for material alteration to surprise); *In re Chateaugay*, 162 B.R. at 957 (same).

We need not decide whether hardship is an independent ground of material alteration, because even if it were, OMT failed to raise a genuine issue of material fact as to hardship. OMT's only evidence of hardship is (generally) that it is a small business dependent on precarious profit margins, and it would suffer a loss it cannot afford. That does not amount to hardship in the present circumstances.

Typically, courts that have relied on hardship to find that an additional term materially alters a contract have done so when the term is one that creates or allocates an open-ended and prolonged liability. *See, e.g.*, *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp. 820, 827 (S.D.N.Y.1988) (finding a hardship in "shift[ing] all risks for any dispute to the buyers"), *aff'd*, 895 F.2d 1410 (2d Cir.1989) (unpublished table disposition); *Charles J. King, Inc. v. Barge LM–10*, 518 F.Supp. 1117, 1120 (S.D.N.Y.1981).

The Tax Clause places on a buyer a contractual responsibility that bears on a specific sale of goods, that is (at least) not uncommon in the industry, and that the buyer could avoid by registration. The cry of hardship rings hollow, because any loss that the Tax Clause imposed on OMT is limited, routine and self-inflicted.

OMT failed to raise a factual issue as to hardship or surprise. Summary judgment was therefore appropriately granted in favor of Bayway.

### B. Admissibility of the Common Trade Practice Evidence.

OMT argues that the district court erred in considering Bayway's evidence of industry custom and practice because it was submitted with Bayway's reply submission rather than with its moving papers. We review for abuse of discretion the district court's decision to rely upon this evidence. *Cf. Cifarelli v. Village of Babylon*, 93 F.3d 47, 53 (2d Cir.1996) (reviewing for abuse of discretion the denial of a motion to amend the judgment, in which the non-moving party objected to the court's reliance on an affidavit submitted with the moving party's reply papers).

Bayway brought this suit alleging that the Tax Clause had been validly incorporated and that OMT had breached the contract by refusing to pay the tax. OMT's answer denied generally that the Tax Clause was ever incorporated, without alleging specifically that it was a material alteration under § 2–207(2)(b). When Bayway moved for summary judgment, its papers tracked the allegations of its complaint. The material alteration argument was raised for the first time in OMT's opposing papers. Bayway's reply submission was thus its first opportunity to rebut OMT's argument with custom and practice evidence.

We affirm the district court's decision because "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving

unfair advantage to the answering party." *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992); *see Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 945 F.Supp. 693, 708 (S.D.N.Y.1996); *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 735 F.Supp. 492, 495 (S.D.N.Y.), *vacated in part on other grounds,* 739 F.Supp. 209 (S.D.N.Y.1990); *United States v. International Bus. Machs. Corp.,* 66 F.R.D. 383, 384 (S.D.N.Y.1975).

In addition to the timing of OMT's material alteration argument, three other reasons support the district court's acceptance of Bayway's evidence:

(i) OMT was not surprised by the affidavits in question. OMT knew that evidence of custom and practice in the industry could refute its material alteration argument, but chose not to introduce any evidence demonstrating that the Tax Clause was objectively surprising. Instead, OMT simply noted in its opposition papers that "Bayway ... has presented no evidence whatsoever of any custom in the industry to have such a tax indemnity term in such a contract." This statement undermines OMT's claim that it was treated unfairly by the court's acceptance of Bayway's evidence. *See Cifarelli,* 93 F.3d at 53.

(ii) OMT did not move the district court for leave to file a sur-reply to respond to Bayway's evidence. OMT thus failed to seek a timely remedy for any injustice. *See, e.g., Litton Indus.,* 767 F.Supp. at 1235 ("Where new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion.").

(iii) OMT makes no claim that it has any contrary evidence to introduce even if it were given an opportunity to proffer it. OMT's real complaint seems to be that its attempt to surprise Bayway with its material alteration argument was thwarted by the district court's exercise of its discretion to receive evidence on the other side.

Under these circumstances, we conclude that the district court acted within its discretion in accepting and relying upon the affidavits submitted with Bayway's reply papers.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.