**ACEROS PREFABRICADOS, S.A., Plaintiff–Appellee,**

v.

**TRADEARBED, INC., Defendant– Appellant.**

**Docket No. 01–7475.**

United States Court of Appeals, Second Circuit.

Argued Aug. 6, 2001.

Decided Feb. 13, 2002.

Elliot Silverman, McDermott, Will & Emery, New York, NY, for Defendant–Appellant.

David W. Mockbee, Mockbee Hall & Drake, P.A., Jackson, MS (Mary Elizabeth Hall, Mockbee Hall & Drake, P.A., Jackson, MS, on the brief, Denis B. Frind, Michael I. Silverstein, Altieri, Kushner, Miuccio & Frind, P.C., New York, NY, of counsel), for Plaintiff–Appellee.

Before: MINER, CALABRESI, and CABRANES, Circuit Judges.

MINER, Circuit Judge.

Defendant-appellant TradeArbed, Inc. ("TA") appeals from an order entered on March 28, 2001 in the United States District Court for the Southern District of New York (McKenna, *J.*) denying its motion to stay the action pending arbitration pursuant to the Federal Arbitration Act, 9

U.S.C. § 3 (the "FAA"),[1] and to dismiss the action pursuant to Federal Rule of Civil Procedure 12.[2] Before the district court, TA argued that it entered into three separate contracts to sell steel to plaintiff-appellee Aceros Prefabricados, S.A. ("Aceros") through three confirmation orders dated January 17, 2000, January 28, 2000, and March 9, 2000, each of which operated as a separate acceptance of Aceros' prior offers to purchase steel. TA further claimed that Aceros bound itself to the arbitration provision that was incorporated by reference into each of the confirmation orders. The district court rejected TA's argument, holding instead that (1) an earlier letter from TA to Aceros, dated January 12, 2000 (the "January 12 letter"), constituted TA's acceptance of Aceros' offers, thereby forming a single contract on that date; and (2) the arbitration provisions were proposed additional terms that materially altered the contract and therefore that they did not become part of that contract. *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 2001 WL 303731, at *2 (S.D.N.Y. Mar.8, 2001) ("*Aceros*"). Accordingly, the court denied TA's motion to stay the action pending arbitration. The court also denied TA's motion for reconsideration. *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 2001 WL 428245, at *1 (S.D.N.Y. Apr. 26, 2001).

· On appeal, TA argues that the district court erred in finding that Aceros was not bound by the arbitration provisions. TA contends that this is so regardless of the date of contract formation. Specifically, TA claims that if January 12 is deemed the date of contract formation, Aceros is bound to arbitrate its disputes with TA because (1) the arbitration provisions do not materially alter the contract; and/or (2) Aceros expressly accepted the second confirmation order, thereby agreeing to modify the original contract to include arbitration. If, instead, the first of three contracts was formed by the January 17 confirmation order, TA claims that the arbitration provisions still became part of the contracts because (1) Aceros signed one order confirmation and retained the others without objection, and (2) even without Aceros' express acceptance of one order confirmation, retention without protest is sufficient to bind Aceros to the arbitration provisions. As a consequence, TA requests that the district court's order be reversed and the case remanded with instructions to stay the action pending arbitration.

For the reasons that follow, we vacate and remand.

## BACKGROUND

On December 17, 1999, TA, an affiliate of the world's largest steel manufacturer, and Aceros, a major Central American contractor, began exchanging letters, most of them written in Spanish, in connection with Aceros' prospective purchase of steel from TA. This correspondence included a

---

1. 9 U.S.C. § 3 provides:

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

2. The district court noted that 9 U.S.C. § 3 directs a court to stay, not dismiss, an action pending arbitration, and therefore focused only on whether it should stay the proceeding not dismiss it. *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 2001 WL 303731, at *1 n. 1 (S.D.N.Y. Mar. 28, 2001)

list from Aceros of the products it desired, and several purchase orders from Aceros that included tonnages and proposed prices. The parties agree that, prior to the January 12 letter from TA to Aceros, no contract had been formed. They disagree, however, as to the significance of the January 12 letter. The January 12 letter states that TA "hereby confirm[s] the orders for beams as follows." The parties dispute the proper English translation of the letter's next sentence. Aceros asserts that it reads: "We hereby confirm that the above-mentioned orders will be shipped in the next few days." In contrast, TA contends that the correct translation is: "The confirmations of the above-mentioned orders will be shipped in the next few days."

Aceros argues that the January 12 letter demonstrates TA's intent to contract and therefore constituted an acceptance of Aceros' prior offers, resulting in a binding contract between the parties as of that date. TA maintains that it accepted Aceros' offers only when it sent three confirmation orders dated January 17, 2000, January 28, 2000, and March 9, 2000, that each confirmation constituted a separate acceptance, and that the parties therefore entered into three distinct contracts for the sale and purchase of steel. Each of the three confirmation orders was sent with a cover sheet stating that the confirmation "includes the sale terms and conditions for the [steel]", and the last page of each confirmation order contains a "[n]ote" that provides: "Subject to terms stated on General Conditions of Sale enclosed. Your failure to object to any term within 10 days of receipt of this contract shall be deemed an acceptance by you." Aceros contends, and TA does not dispute, that the General Conditions of Sale were not included with any of the three confirmation orders. Nonetheless, the General Conditions of Sale contain the following arbitration pro-

vision: "Any controversy arising under or in connection with the contract shall be submitted to arbitration in New York City in accordance with the rules then obtaining of the American Arbitration Association." Aceros did not sign or return the January 17 confirmation, and it is undisputed that Aceros never objected to any term in any of the confirmation orders. It is also undisputed that an Aceros agent accepted the January 28 confirmation order, by writing "[a]ceptado" on and signing each of the four pages of the confirmation order and then mailing it back to TA. As with the first confirmation order, Aceros neither signed nor returned the third confirmation order dated March 9.

On December 11, 2000, Aceros commenced this diversity action against TA for breach of contract. On January 5, 2001, relying on the arbitration clause, TA moved to stay the action pending arbitration pursuant to section 3 of the FAA or to dismiss the action pursuant to Rule 12 of the Federal Rules of Civil Procedure. Aceros responded that the arbitration clause was not part of the parties' agreement as memorialized on January 12 because the General Conditions of Sale were (1) not accepted by Aceros; (2) not incorporated by reference into the confirmation orders; and (3) not enclosed with the confirmation orders as the orders themselves stated.

In a memorandum and order dated March 27, 2001, the district court denied TA's motion. *Aceros*, 2001 WL 303731, at *3. The court found that the January 12 letter evidenced the formation of a contract between the parties because while all prior correspondence from TA to Aceros contained language indicating an intent not to be bound, such as "pending confirmation from our principals" or "pending confirmation from our main office," the January 12 letter did not contain any similarly limiting

language. *Id.* at *2. In reaching its conclusion, the court relied, without explanation, on Aceros' translation of the disputed confirmation language. Having found a contract formed by the January 12 letter, the court viewed the terms of the January 17, January 28, and March 9 confirmation orders—among them, the requirement to arbitrate disputes—as proposals for additional terms to the contract. *Id.* Without any mention of Aceros' acceptance of the January 28 confirmation order, the court held, as a matter of law, that an arbitration provision materially alters legal rights under a contract, and therefore that the arbitration clause was not part of the parties' agreement. *Id.*

On April 4, 2001, TA filed a motion requesting that the court reconsider its order denying TA's motion to stay the case pending arbitration. In seeking reconsideration, TA contended that the district court erroneously relied on Aceros' translation of the January 12 letter rather than the translation offered in an affidavit of TA's vice president. In a memorandum and order dated April 23, 2001, the district court denied the motion for reconsideration. The court held that (1) the "self-serving affidavit of [TA's vice president] does not undermine the Court's reliance on the translation provided by [Aceros]," and (2) even under TA's proposed translation, "the language not disputed is sufficient to support" the court's denial of TA's motion to stay the proceedings. *Aceros Prefabricados*, 2001 WL 428245, at *1. This interlocutory appeal followed.

**3.** Section 16(a) provides that "[a]n appeal may be taken from ... an order ... refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A).

**4.** The parties' briefs assume that New York substantive law governs the issues of contract

## DISCUSSION

We have jurisdiction to hear this interlocutory appeal pursuant to section 16(a) of the FAA.[3] We review *de novo* the district court's legal conclusion that the parties did not contractually bind themselves to arbitrate disputes, *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Manufacturing Co.*, 189 F.3d 289, 295 (2d Cir.1999), and review factual findings underlying those conclusions for clear error. *Id.* In regard to the contract at issue, we apply New York law.[4]

Aceros maintains that it could not have accepted the arbitration clause because the General Conditions of Sale (which include the arbitration clause) were not enclosed with the order confirmations nor mentioned by TA. That the General Conditions of Sale were not themselves included with the order confirmations does not render the arbitration provisions invalid. Applying New York law, we have found that "[p]arties to a contract are plainly free to incorporate by reference, and bind themselves *inter sese* to, terms that may be found in other agreements." *Ronan Assocs. v. Local 94–94A–94B, Int'l Union of Operating Eng'rs*, 24 F.3d 447, 449 (2d Cir.1994). Indeed, we have specifically found that parties were bound to arbitrate under arbitration clauses they never signed, where those clauses were contained in other documents that were incorporated by reference. *See, e.g., id.* (finding employment contract incorporated by reference union collective bargaining agreement including right to compel arbitration of questions of discharge); *Pro-*

formation presented here, and such "implied consent ... is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir.2000) (quotation marks and citation omitted).

*gressive Cas. Ins. Co. v. C.A. Reasegurado-ra Nacional De Venezuela,* 991 F.2d 42, 47 (2d Cir.1993) (finding insurance contract incorporated by reference separate document that included arbitration provision binding the parties to arbitrate). Thus, TA's failure to include the General Conditions of Sale with the confirmation orders does not prevent those terms from being included in its contract with Aceros.

The district court held that the January 12 letter constituted an acceptance by TA of Aceros' offers to purchase steel, thereby forming a contract between the parties. For the reasons discussed below, we conclude that whether the January 12 letter formed a single contract or the confirmation orders formed three separate contracts, the parties are bound by the arbitration provisions. We therefore find it unnecessary to determine the precise moment of contract formation.

Under the New York Uniform Commercial Code (the "UCC") an expression of acceptance or written confirmation that sets forth terms in addition to those initially agreed upon will not defeat formation of a binding contract. *See* N.Y. U.C.C. § 2–207(1) (McKinney 1993).[5] Instead, a contract will be found and the additional terms (in this case, the General Conditions of Sale, including the arbitration clause) are then treated as "proposals" for addition to the contract. *Id.* § 2–207(2). This analysis applies to both expressions of acceptance that form the contract, *see id.* § 2–207(1); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 223 (2d Cir.2000) ("[Plaintiff's] fax is effective to form a contract as an acceptance—even though it stated or referenced addi-

tional terms . . . .") (applying New York law), and written confirmations of agreements already reached, *see* N.Y. U.C.C. § 2–207(1); *J.J.'s Mae, Inc. v. H. Warshow & Sons, Inc.,* 277 A.D.2d 128, 128, 717 N.Y.S.2d 37, 38 (1st Dep't 2000) (resolving issue of whether a "clause in a confirmation invoice constitutes a material alteration of an existing contract between merchants within the meaning of UCC 2–207"). An Official Comment to section 2–207 makes clear the applicability of that provision to these two situations:

> Under this Article a proposed deal which in commercial understanding has in fact been closed is recognized as a contract. Therefore, any additional matter contained *either in the writing intended to close the deal or in a later confirmation* falls within subsection (2) and must be regarded as a proposal for an added term. . . .

N.Y. U.C.C. § 2–207 cmt. 2 (emphasis added). Therefore, were we to find that the contract between Aceros and TA was formed on January 12, as Aceros claims and as the district court held, then the three confirmation orders would constitute written confirmations stating terms additional to the January 12 agreement, and analysis would proceed under section 2–207(2).

Were we to agree instead with TA's argument that each of its order confirmations served as a separate acceptance of individual prior offers by Aceros to purchase steel, the confirmations would then constitute acceptances proposing additional terms and analysis would likewise proceed under section 2–207(2), albeit of three

---

5.  Section 2–207(1) of the UCC provides:
    (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms addi-
tional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
N.Y. U.C.C. § 2–207(1).

individual contracts.[6] Both contract formation scenarios lead us to the same conclusion regarding the parties' obligation to arbitrate disputes.

█ We therefore turn to an examination of whether the arbitration provisions are part of the parties' contract pursuant to section 2–207(2).[7] It is undisputed that both TA and Aceros are merchants for the purposes of the UCC. *See id.* § 2–104(1). Under the UCC, proposed additional terms become part of a contract between merchants unless one of three statutory exceptions is satisfied. *See id.* § 2–207(2).[8] Aceros invokes only the "material alteration" exception of section 2–207(2)(b), which prohibits inclusion in a contract of a proposed additional term that would "materially alter" the contract unless the other party agrees. *Id.* § 2–207(2)(b). Aceros agreed to arbitrate disputes in regard to goods shipped under the January 28 confirmation order when it wrote "[a]ceptado" on and signed every page of that confirmation order and mailed it back to TA.[9] Aceros therefore bound itself to arbitrate disputes arising out of that order of goods. In contrast, neither the January 17 nor the March 9 confirmation order was expressly accepted by Aceros, and we must therefore determine whether the arbitration clause, as a proposed additional term in those two confirmation orders, is included in the parties' contract.

█ The district court stated that "[a]s a matter of law, an arbitration provision materially alters ones' [sic] legal rights under a contract." *Aceros*, 2001 WL 303731, at *2. The two authorities cited by the district court, *DeMarco California Fabrics, Inc. v. Nygard International, Ltd.*, No. 90 CIV. 0461, 1990 WL 48073, at *3 (S.D.N.Y. Apr.10, 1990), and *J.J.'s Mae*, 277 A.D.2d 128, 128, 717 N.Y.S.2d 37, in turn relied on the 1978 New York Court of Appeals case, *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 380 N.E.2d 239, 408 N.Y.S.2d 410 (1978). *Marlene Industries* restated the so-called New York rule that "parties to a commercial transaction will

6. We reject TA's claim that Aceros' express acceptance of the one confirmation order that pertained to only one shipment of goods could operate to bind it both backward in time, to the January 17 order, and forward in time, to the March 9 order.

7. For the sake of clarity, we refer to the contractual status between the parties as involving a single "contract" with the understanding that this designation also encompasses the theory that the confirmation orders formed three separate contracts.

8. Section 2–207(2) of the UCC provides:

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
N.Y. U.C.C. § 2–207(2).

9. Aceros claims that even this acceptance is ineffective to bind it to arbitrate disputes as to that shipment of goods because it did not sign "in the space provided as required by [TA's] order confirmation form." We reject this argument. The last page of the order contains the "[n]ote" that subjects the order to the General Conditions of Sale. At the end of the note are the words "ACCEPTED BY:". Rather than signing the order in the small space provided, an Aceros agent wrote "[a]ceptado" and signed his name less than two inches above that particular location. This is clearly an effective acceptance of that confirmation order and all the terms incorporated by reference. In any event, even if Aceros had not expressly accepted this confirmation order, it would nonetheless be bound to arbitration for the same reasons it is bound as to the other two confirmation orders.

not be held to have chosen arbitration as the forum for the resolution of their disputes in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate." *Id.* at 333, 408 N.Y.S.2d 410, 380 N.E.2d 239 (internal quotation marks omitted). Thus, unlike nonarbitration agreements, which need only be proven by a preponderance of the evidence, New York law requires a higher degree of proof for arbitration agreements. *See Progressive Cas.*, 991 F.2d at 46; *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 6, 399 N.E.2d 1154, 424 N.Y.S.2d 133 (1979). While state law generally governs issues of contract interpretation in cases arising under the FAA, *Progressive Cas.*, 991 F.2d at 46, such disparate treatment of arbitration provisions is not permitted. *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

In *Perry*, the Supreme Court held that under the FAA "[a] court may not, ... in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." *Id.* at 492 n. 9, 107 S.Ct. 2520. Following the dictates of *Perry*, we have considered the rule cited in *Marlene Industries* "preempted by the FAA because of its discriminatory treatment of arbitration provisions." *Chelsea Square Textiles*, 189 F.3d at 296 n. 5; *see also Progressive Cas.*, 991 F.2d at 46 ("Because *Perry* prohibits ... discriminatory treatment of arbitration agreements, the rule set forth in *Marlene Industries* is preempted."). Thus, contrary to the district court's holding, arbitration agreements do not, as a matter of law, constitute material alterations to a contract; rather, the question of their inclusion in a contract under section 2–

207(2)(b) is answered by examining, on a case-by-case basis, their materiality under a preponderance of the evidence standard as we would examine any other agreement. *See Hatzlachh Supply Inc. v. Moishe's Elecs., Inc.*, 828 F.Supp. 178, 183 (S.D.N.Y. 1993), *vacated on other grounds by*, 848 F.Supp. 25 (S.D.N.Y.1994).

"[T]he burden of proving the materiality of the alteration must fall on the party that opposes inclusion." *Bayway Ref.*, 215 F.3d at 223. This is so because the UCC presumes that between merchants additional terms will be included in a contract. *Id.* Thus, "if neither party introduced any evidence, the [proposed additional term] would, by the plain language of § 2–207(2), become part of the contract." *Id.* Aceros was therefore required to establish that the arbitration provision constituted a material alteration to its contract with TA.

A material alteration is one that would "result in surprise or hardship if incorporated without express awareness by the other party." N.Y. U.C.C. § 2–207 cmt. 4; *Bayway Ref.*, 215 F.3d at 224. Surprise includes both a subjective element of what a party actually knew and an objective element of what a party should have known. *Id.* We have stated that "[a] profession of surprise and raised eyebrows are not enough." *Id.* Instead, "[t]o carry [its] burden ... [the nonassenting] party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." *Id.*

Aceros has failed to submit any evidence demonstrating either subjective or objective surprise at the inclusion of an arbitration clause in its contract with TA. Aceros' sole reference to either surprise or hardship is supplied in an affidavit of its founder and general manager stating that "the addition of an arbitration clause

which [Aceros] did not accept and never saw until long after the parties had negotiated the terms and entered into their contract would result in surprise and hardship to [Aceros]." This conclusory, unsupported statement falls far short of meeting the burden of proof required to show surprise and therefore the materiality of a proposed additional term. *Id.* at 224–25. In the absence of any evidence indicating Aceros' surprise as to the inclusion of the arbitration provision, it has failed to establish that such a provision constitutes a material alteration of the contract. In a footnote in its brief on appeal, Aceros "submits that surprise and hardship are self-evident where, as here, there was no reference to nor mention by [TA] to arbitration until after suit was filed." This claim ignores the fact that Aceros has the burden of *establishing* the elements of surprise or hardship, not merely stating that they are present. As with the statement in the affidavit, this assertion is conclusory and unsupported by any evidence in the record.

In *Bayway Refining*, we noted that while Official Comment 4 to section 2–207 seems to suggest that hardship is an independent ground for finding that an alteration is material, there are cases indicating that hardship is not an element separate from surprise but rather a "consequence" of material alteration. *Id.* at 226 (citing *Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1336 (7th Cir. 1991); *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F.Supp. 1012, 1017 (E.D.N.Y.1996); and *In re Chateaugay Corp.*, 162 B.R. 949, 957 (Bankr.S.D.N.Y. 1994)). We declined in *Bayway Refining* to decide whether hardship is an independent ground in the material alteration analysis because even if it were, the party resisting arbitration there failed to raise a genuine issue of material fact as to hardship sufficient to survive a motion for summary judgment. Likewise, here we need not make such a determination because-for the same reason Aceros has failed to establish surprise, the lack of any evidence supporting this claim—it has also failed to establish that it would suffer any hardship in being bound to arbitration.

■ Moreover, TA's vice-president submitted an affidavit indicating that he has been employed in the steel business for more than thirty years and that "[a]rbitration clauses, like the one here, are commonplace and the norm in the industry and have been for a very long time." Aceros did not rebut this assertion. Under New York law, an arbitration agreement does not result in surprise or hardship where arbitration is the custom and practice within the relevant industry. *See Chelsea Square Textiles*, 189 F.3d at 296 ("[E]vidence of trade usage and course of dealings between parties supported ... finding of an agreement to arbitrate.") (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995)); *Schubtex*, 49 N.Y.2d at 6, 399 N.E.2d 1154, 424 N.Y.S.2d 133 ("[A] provision for arbitration [can] ... be implied from a course of past conduct or the custom and practice in the industry."). The logic of this rule is obvious: a merchant in a given industry will have, by definition, a difficult time establishing either subjective or objective "surprise" regarding a proposed contract term that is standard in that industry.

The Official Comments to section 2–207 recognize the importance of trade practices to the material alteration analysis. Official Comment 4 lists "typical clauses which would normally 'materially alter' the contract and so result in surprise or hardship." N.Y. U.C.C. § 2–207 cmt. 4. A provision to arbitrate disputes is not among them. While the list is not exhaustive, the

common thread among the examples provided is that they all constitute provisions that significantly deviate from industry norms. *See id.; see also Daisy Indust. v. Kmart Corp.*, No. 96 CIV. 4211, 1999 WL 1043964, at *8 (S.D.N.Y. Nov. 17, 1999) ("Most of the examples set forth in the comment significantly alter standard industry practice such that a party not used to operating under the additional terms would be surprised."); *Suzy Phillips Originals, Inc. v. Coville, Inc.*, 939 F.Supp. 1012, 1017 (E.D.N.Y.1996) ("[The] examples of clauses which materially alter a contract … all … have in common that they significantly alter standard industry practice and thus could surprise a buyer who would not have expected to be operating under such terms."). Conversely, among the "[e]xamples of clauses which involve no element of unreasonable surprise," Official Comment 5 lists proposed terms that are "within customary limits," "within the range of trade practice[s]," and "within … customary trade tolerances." N.Y. U.C.C. § 2–207 cmt. 5.

▮▮▮ Although most of our cases that discuss trade usage in the context of section 2–207(2)(b) disputes deal with the textile industry, *see, e.g., Chelsea Square Textiles*, 189 F.3d 289; *Pervel Indust., Inc. v. T M Wallcovering, Inc.*, 871 F.2d 7 (2d Cir.1989), there is nothing in those cases or in the UCC to indicate that consideration of trade usage is limited to that industry. *Cf. Bayway Ref.*, 215 F.3d at 225 (finding that proposed additional term was part of the parties' contract because inclusion of such term was commonplace in the petroleum industry). Indeed, the importance of industry practices in the interpretation of contracts for the sale of goods permeates the entire UCC. *See* James J. White & Robert S. Summers, *Uniform Commercial Code* § 3–3 (2d ed. 1980). This is clear from its definition of "usage

of trade": "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question." N.Y. U.C.C. § 1–205(2). Moreover, "it is not necessary for both parties to be consciously aware of the trade usage. It is enough if the trade usage is such as to 'justify an expectation' of its observance." White & Summers, *supra*. Furthermore, "[usage of trade is] relevant not only to the interpretation of express contract terms, but may [itself] constitute contract terms." *Id.* Thus, standard industry practices are always relevant when interpreting contracts governed by the UCC, and Aceros failed to rebut TA's assertion that arbitration provisions are commonplace in the steel industry.

Aceros did not submit any evidence of surprise or hardship and therefore has failed to demonstrate that the inclusion of an arbitration provision in its contract with TA constitutes a material alteration under section 2–207(2)(b). Moreover, TA submitted unrebutted evidence that arbitration is standard practice within the steel industry, thereby precluding Aceros from establishing surprise or hardship. Accordingly, we hold that the arbitration provisions proposed in TA's confirmation orders became part of the contract, and that Aceros and TA are therefore required to arbitrate their disputes.

## CONCLUSION

For the foregoing reasons, the order appealed from is vacated, and the action is remanded to the district court for further proceedings consistent with this opinion.