10-4267-cv
ICC Chemical Corp. v. Vitol, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of June, two thousand eleven,

Present:     ROSEMARY S. POOLER,
             RICHARD C. WESLEY,
                   *Circuit Judges*.
             JOHN G. KOELTL,[*]
                   *District Judge*.

_____

ICC CHEMICAL CORPORATION,

                   *Plaintiff-Appellant*,

             -v-                                              10-4267-cv

VITOL, INCORPORATED,
                   *Defendant-Appellee*.

_____

Appearing for Appellant:     Robert James Basil, Collier & Basil, P.C., New York, NY.

Appearing for Appellee:      Peter Ligh, Sutherland Asbill & Brennan LLP, New York, NY.

---

[*] The Honorable John G. Koeltl, United States District Court for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Under the Federal Arbitration Act ("FAA"), a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. *See* 9 U.S.C. § 3. The FAA leaves no discretion with the district court in the matter. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a consequence, we review a district court's determination as to the arbitrability of a dispute de novo. *See, e.g.*, *Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 604 (2d Cir. 1991).

The sole issue in this breach of contract action between two merchants, a chemical company and an energy trader, is whether the parties agreed to arbitrate. ICC Chemical Corporation ("ICC") agreed to purchase mixed xylenes, a petroleum product, from Vitol, Incorporated ("Vitol"), through an independent broker, Moab Oil ("Moab"). The parties reached an agreement on July 2, 2009, and Moab sent a confirmation to ICC and Vitol the same day, setting forth certain terms of the agreement, including price, quantity, quality, delivery, and payment. Shortly thereafter, on July 6, 2009, Vitol transmitted a written confirmation repeating many of the terms of the Moab confirmation and setting forth certain additional terms mandating, among other things, arbitration of disputes. *ICC Chemical Corp. v. Vitol, Inc.*, No. 09 Civ. 7750, 2009 WL 4059160, at *2 (S.D.N.Y. Nov. 18, 2009).

The Vitol confirmation began: "In accordance with the binding agreement between the parties, this contract contains the entire agreement between the parties and supersedes all previous negotiations, representations, agreements, broker confirmations, or commitments with regard to its subject matter." The document then stated that "Vitol is pleased to confirm the following agreement," and set forth the relevant terms, including the arbitration clause.

ICC does not dispute that it received the Vitol confirmation on or about July 6, 2009. It is also undisputed that ICC never expressed any disagreement with the document's terms prior to the instant action.

The parties agree that the contract is governed by New York law. Article 2 of the New York Uniform Commercial Code ("N.Y. U.C.C.") applies to contracts for the sale of goods between merchants. As the district court noted, it is undisputed that this was a contract for the sale of goods and that ICC and Vitol were acting as merchants. *See* N.Y. U.C.C. § 2-104.

N.Y. U.C.C. Section 2-207 provides:

(1)     A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2)   The additional terms are to be construed as proposals for addition
      to the contract.  Between merchants such terms become part of the
      contract unless:

      (a)   the offer expressly limits acceptance to the terms of the
            offer;

      (b)   they materially alter it; or

      (c)   notification of objection to them has already been given or
            is given within a reasonable time after notice of them is
            received.

Section 2-207 applies to "written confirmations of agreements already reached." *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 98 (2d Cir. 2002); N.Y. U.C.C. § 2-207, cmt. 1 (noting that Section 2-207 applies "where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal acknowledgments or memoranda embodying the terms so far as agreed upon and adding terms not discussed"); *see also* 1 James J. White & Robert S. Summers, *Uniform Commercial Code* 74 (5th ed. 2002).  Here, ICC and Vitol reached a binding oral agreement brokered by Moab; Moab confirmed the terms of that oral agreement as Moab understood them; and soon thereafter, Vitol sent a "formal acknowledgment[] embodying the terms" agreed upon and "adding terms not discussed."  N.Y. U.C.C. § 2-207, cmt. 1.  The Vitol confirmation, which Vitol faxed to ICC on July 6, was sent within a "reasonable time."  Furthermore, the Vitol confirmation did not purport to condition the validity of the oral agreement upon acceptance of the additional terms it contained.  Thus, the Vitol confirmation is covered by the language of Section 2-207(1); whether the arbitration clause became part of the agreement depends on Section 2-207(2).  Since the exchange was between "merchants," the additional terms automatically became part of the agreement unless they fell into one of the exceptions of N.Y. U.C.C. Section 2-207(2).  In this context, the only question in this case is whether the arbitration clause in the Vitol confirmation materially altered the agreement between the parties.  *See* N.Y. U.C.C. § 2-207(2)(b).

The materiality of a term is a question of fact we review for clear error.  *Aceros*, 282 F.3d at 100.  "[T]he burden of proving the materiality of the alteration must fall on the party that opposes inclusion."  *Id.* (internal quotation marks omitted).  "[A]rbitration agreements do not, as a matter of law, constitute material alterations to a contract; rather, the question of their inclusion in a contract under Section 2-702(2)(b) is answered by examining, on a case-by-case basis.  *See id.*

 "A material alteration is one that would 'result in surprise or hardship if incorporated without express awareness by the other party.'"  *Id.* (quoting N.Y. U.C.C. § 2-207, cmt. 4).  We have stated that "surprise includes both the subjective element of what a party actually knew and the objective element of what a party should have known.  To carry the burden of showing surprise, a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term."  *Coosemans Specialities, Inc. v.*

3

*Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) (internal quotation marks omitted).

ICC argues that the arbitration clause in the Vitol confirmation is material because no reasonable merchant would have consented to the additional term. However, ICC's own witness testified by declaration before the district court that "[t]raders in the petroleum and chemical industries sometimes agree to arbitration, and sometimes do not." Based in part on this representation, the district court concluded that ICC had "failed to show that the arbitration provision—or any other provision of the Vitol written confirmation—would surprise or impose hardship on ICC." *ICC Chemical Corp. v. Vitol, Inc.*, No. 09 Civ. 7750, 2009 WL 4059160, at *4 (S.D.N.Y. Nov. 18, 2009). We agree that ICC failed to demonstrate the required objective surprise regarding the arbitration clause. ICC has failed to adequately distinguish the arbitration clause in this contract from other arbitration clauses that, as ICC's witness acknowledged, are "sometimes" used in the industry. Under the circumstances, the district court's finding that the arbitration clause was not material was not clear error.

We have considered the remainder of ICC's contentions and find them to be without merit. Accordingly, the judgment of the district court hereby is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4