**Anne RUGGIERO, Individually and as Representative of the Estate of Albert Ruggiero, Plaintiff–Appellant,**

v.

**WARNER–LAMBERT COMPANY and Parke Davis, Defendants–Appellees.**

Docket No. 04–6674–CV.

United States Court of Appeals, Second Circuit.

Argued: July 11, 2005.

Decided: Sept. 16, 2005.

---

Ronald R. Benjamin, Law Office of Ronald R. Benjamin, Binghamton, NY, for Appellant.

David Klingsberg, Kaye Scholer LLP, New York, N.Y. (Bert L. Slonim and Steven Glickstein, on the brief), for Appellees.

Before: JACOBS and B.D. PARKER, Circuit Judges, and HURD, District

Judge.*

DENNIS JACOBS, Circuit Judge.

Plaintiff Anne Ruggiero appeals from a judgment entered by the United States District Court for the Southern District of New York (Kaplan, *J.*), dismissing on summary judgment a complaint alleging that her husband's cirrhosis and death were caused by Rezulin, a diabetes medication manufactured and sold by defendants Warner–Lambert Co. and Parke Davis ("Defendants"). The ground for dismissal was that Ruggiero failed to produce sufficient evidence that Rezulin was capable of causing or exacerbating cirrhosis (so-called "general" causation). On appeal, Ruggiero argues principally that [i] the ruling on general causation was error because that issue was first raised in Defendants' summary-judgment reply papers, and is a subject of on-going consolidated proceedings in the multi-district litigation ("MDL") of which Ruggiero's case is part; and [ii] medical expert evidence attributing Mr. Ruggiero's cirrhosis and death to Rezulin was erroneously ruled inadmissible. For the following reasons, we affirm.

## BACKGROUND

Albert Ruggiero was diagnosed with Type–II diabetes in 1982, and in May 1997, he began taking Rezulin, a diabetes medication manufactured and sold by Defendants. His death on August 24, 1998 was attributed to liver failure caused by cirrhosis. On March 21, 2000, Defendants halted distribution of Rezulin at the request of the Food and Drug Administration, in light of concerns that the drug caused increased liver toxicity.

Anne Ruggiero commenced this product-liability action, claiming that Rezulin caused Albert's cirrhosis. The case was added to the "[m]ore than one thousand" Rezulin-related cases consolidated for pretrial proceedings in the Southern District of New York, before Judge Kaplan. *In re Rezulin Prods. Liab. Litig. (MDL No. 1348)*, 223 F.R.D. 109, 111 (S.D.N.Y.2004). Defendants subsequently moved for summary judgment in Ruggiero's individual case.

The district court granted summary judgment, holding that Ruggiero produced insufficient evidence of "general" causation, *i.e.*, evidence that Rezulin is capable of causing or exacerbating cirrhosis of the liver.[1] Specifically, the court ruled that the sole evidence of general causation submitted by Ruggiero—the expert opinion of Dr. Douglas T. Dietrich—was inadmissible (as to that issue) under Fed R. Evid. 702 ("Testimony by Experts") and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court reasoned that "Dr. Dietrich was unable to point to any studies or, for that matter, anything else that suggested that cirrhosis could be caused or exacerbated by Rezulin." Dr. Dietrich's opinion rested on a review of Albert's medical records and a "differential diagnosis," *i.e.*, a patient-specific process of ruling out potential causes of an illness as unlikely, until one cause remains.[2] The court con-

---

* The Honorable David N. Hurd of the United States District Court for the Northern District of New York, sitting by designation.

1. General causation bears on whether *the type of injury at issue can be caused or exacerbated* by the defendant's product. "Specific" causation bears on whether, in the particular instance, *the injury actually was caused or*

*exacerbated* by the defendant's product. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir.2002).

2. The district court assumed for the purpose of analysis that Dietrich relied on a differential diagnosis but noted that "it was not really clear" that he did so.

cluded that this approach did not provide a reliable basis for Dr. Dietrich's opinion that Rezulin is capable of causing or exacerbating cirrhosis.

## DISCUSSION

We review the grant of summary judgment *de novo*. *See Anthony v. City of New York*, 339 F.3d 129, 134 (2d Cir.2003). A ruling as to the admissibility of expert evidence is reviewed for abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142–43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("On a motion for summary judgment .... the question of admissibility of expert testimony ... is reviewable under the abuse-of-discretion standard.").

## I

As a threshold matter, Ruggiero claims that the district court should not have reached the issue of general causation.

■ First, she argues that the issue was first raised in Defendants' summary-judgment reply papers. *See, e.g., Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) ("Arguments made for the first time in a reply brief need not be considered by a court."). Assuming that is so, the district court had discretion to consider it. *See Bayway Ref. v. Oxygenated Mktg. & Trading*, 215 F.3d 219, 226 (2d Cir.2000) (reviewing for abuse of discretion district court's decision to rely on evidence submitted with moving party's reply papers).

■ Defendants' moving papers did not argue expressly in terms of general causation. However [i] the motion was cast in terms of the broader and subsuming argument that Ruggiero could not "establish the essential element of causation"; [ii] a declaration appended to the moving papers noted that "[t]here are no scientific studies in the medical literature that conclude Rezulin can cause cirrhosis"; and [iii] *Ruggiero's* opposition papers cited as a genuine issue of material fact "[w]hether or not there are scientific studies in the medical literature that conclude Rezulin can cause liver failure such as caused decedent Albert Ruggiero's death." Under the circumstances, Ruggiero cannot claim that she was blindsided by Defendants' reliance on general causation or that she was prejudiced by the district court's consideration of that issue.[3] In any event, it is hard for Ruggiero to claim unfair prejudice now, because she could have claimed surprise in the district court and sought to file a responsive sur-reply.[4]

---

3. *See, e.g., Bayway*, 215 F.3d at 227 (district court properly relied on evidence submitted with moving party's reply, where, *inter alia,* record showed that opposing party knew such evidence could refute its claim but "chose not to introduce any evidence" of its own); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 53 (2d Cir.1996) (district court properly relied on evidence submitted with defendants' summary-judgment reply, where record showed that plaintiff "was fully aware prior to the defendants' reply of" the issue to which evidence pertained); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir.2000) (district court's *sua sponte* grant of summary judgment neither surprised nor prejudiced losing party where, *inter alia,* party had previ-

ously claimed that it had introduced sufficient evidence concerning the very issue on which the court based its decision).

4. *See, e.g., Bayway*, 215 F.3d at 227 (district court properly considered evidence submitted with plaintiff's reply brief where, *inter alia,* defendant "did not move the district court for leave to file a sur-reply to respond"); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir.2000) (plaintiff was not prejudiced by district court's *sua sponte* grant of summary judgment where, *inter alia,* plaintiff "did not, before the district court, raise any objections based on lack of notice. Nor did it subsequently seek to introduce additional evidence that might have convinced the district court

Second, Ruggiero argues that the district court should not have considered the issue of general causation because that issue [i] is being litigated by the "Plaintiffs Executive Committee" in the consolidated MDL proceedings and [ii] implicates the law-of-the-case doctrine by reason of a previous contrary decision in those consolidated proceedings (or somewhere else). Even assuming that the law-of-the-case doctrine would apply, Ruggiero's brief directs us to no such contrary ruling.

■ In any event, we decline to consider the merits of this argument because Ruggiero failed to present it to the district court. *Id.* We have discretion to consider issues that a party failed to raise in the district court, *see Booking v. Gen. Star Mgmt. Co.,* 254 F.3d 414, 418–19 (2d Cir. 2001), but we decline to do so here. For the reasons stated above, there is no good excuse for Ruggiero's failure to bring this complaint to the district court's attention; and we are most hesitant to consider it in the first instance, given the unmatched expertise Judge Kaplan has acquired while presiding over the Rezulin MDL over the past five years.

## II

The district court granted summary judgment to Defendants on the ground that Ruggiero submitted no admissible evidence to show, as a matter of general causation, that Rezulin can cause or exacerbate cirrhosis of the liver. Her only submission arguably on point was the expert opinion of Dr. Dietrich, who concluded with reasonable medical certainty that "Albert Ruggiero's liver disease was caused by his taking Rezulin." The district court

ruled it inadmissible under the standards set out in Fed.R.Evid. 702 and *Daubert.*

Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As the Supreme Court explained in *Daubert,* Rule 702 requires the district court to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. 2786. As to reliability, "*Daubert* enumerated a list of factors that, while not constituting a 'definitive checklist or test,' a district court might consider . . . : whether a theory or technique has been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (quoting *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 266 (2d Cir.2002).

■ A district court's decision as to how the reliability of expert testimony should

to change its position."); *cf. Gwozdzinsky v. Magten Asset Mgmt. Corp.,* 106 F.3d 469, 472 (2d Cir.1997) ("[A]bsent manifest injustice or

a showing of extraordinary need, we will not decide an issue on appeal not first presented to the district court.").

be determined, as well as the ultimate decision as to whether that testimony is reliable, are reviewed for abuse of discretion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Joiner*, 522 U.S. at 142–43, 118 S.Ct. 512 (abuse-of-discretion standard persists at summary judgment stage).

■ Judge Kaplan applied the *Daubert* factors and concluded that there was no reliable basis for Dr. Dietrich's opinion that Rezulin could cause or exacerbate cirrhosis of the liver: "Dr. Dietrich was unable to point to any studies or, for that matter, anything else that suggested that cirrhosis could be caused or exacerbated by Rezulin." The judge further concluded that insofar as Dr. Dietrich's opinion relied on a differential diagnosis, that technique was insufficiently reliable to support the opinion as to general causation (though it might suffice to support an opinion that a drug shown to be capable of causing the condition likely did so in a particular case).

We see no error. A differential diagnosis is "a patient-specific process of elimination that medical practitioners use to identify the 'most likely' cause of a set of signs and symptoms from a list of possible causes." *Hall v. Baxter Healthcare Corp.*, 947 F.Supp. 1387, 1413 (D.Or.1996); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 270 n. 6 (3d Cir.1991) (defining "differential diagnosis" as a "process whereby medical doctors experienced in diagnostic techniques provide testimony countering other possible causes ... of the injuries at issue"). As the district court observed, this method does not (necessarily) support an opinion on general causation, because, like any process of elimination, it assumes that "the

final, suspected 'cause' remaining after this process of elimination must actually be *capable* of causing the injury." *Cavallo v. Star Enter.*, 892 F.Supp. 756, 771 (E.D.Va. 1995), *aff'd on this ground, rev'd on other grounds*, 100 F.3d 1150 (4th Cir.1996); *Hall*, 947 F.Supp. at 1413 (noting that a differential diagnosis "*assumes* that general causation has been proven for the list of possible causes it eliminates"). Where an expert employs differential diagnosis to " 'rule out' other potential causes" for the injury at issue, he must also " 'rule in' the suspected cause," and do so using "scientifically valid methodology." *Id.* Here, Dr. Dietrich may have used a differential diagnosis to rule out competing causes of cirrhosis without establishing that Rezulin is among them.

We cannot say that a differential diagnosis *may never* provide a sufficient basis for an opinion as to general causation. There may be instances where, because of the rigor of differential diagnosis performed, the expert's training and experience, the type of illness or injury at issue, or some other case-specific circumstance, a differential diagnosis is sufficient to support an expert's opinion in support of both general and specific causation. *Cf. McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043–44 (2d Cir.1995) (district court did not abuse discretion in ruling that opinion on causation was admissible, where opinion was based on care and treatment of plaintiff, medical history, pathological studies, product's safety data sheet, reference to scientific and medical treatises, expert's training and experience, as well as differential diagnosis). The district judge has broad discretion in determining whether in a given case a differential diagnosis is enough by itself to support such an opinion.[5]

---

**5.** On this score, the district court indicated that even if a differential diagnosis *could* be

probative of general causation in an appropriate case, it was not so here:

As a final matter, Ruggiero—relying on language in *McCulloch*—argues that any fault in Dr. Dietrich's use of a differential diagnosis goes to weight, not admissibility. After the *McCulloch* Court reviewed a number of factors underlying the opinion of the plaintiff's expert, the Court stated that "[d]isputes as to the strength of his credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Id.* at 1044. Ruggiero is over-reading that passage. The opinion had held, supra, that the district court did not abuse its discretion in ruling that the expert's opinion *in that case* was admissible; in the quoted passage, the Court was merely signaling that any remaining objection as to the expert's credentials or methodology was for the consideration of the jury. In any event, Ruggiero's reading of *McCulloch* is precluded by the Supreme Court's subsequent decision in *Joiner.* In *Joiner,* the Court held that "conclusions and methodology are not entirely distinct from one another," and that "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. at 146, 118 S.Ct. 512. Following *Joiner,* we held that "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 266 (2d Cir.2002). In light of *Joiner* and *Amorgi-*

---

It is not at all clear ... that a district court lacks discretion to conclude in an individual case that an expert's opinion as to general causation based on an unreliable differential diagnosis must be received in evidence.

This case illustrates the fundamental problem with differential diagnosis ....

*anos,* Ruggiero's reliance on *McCulloch* is unpersuasive.

\*      \*      \*      \*      \*      \*

We have considered Ruggiero's remaining arguments and find each to be without merit. The judgment of the district court is affirmed.

---

The doctor has not offered any reliable basis for concluding that Rezulin is capable of causing the cirrhosis that caused the liver failure that resulted in Mr. Ruggiero's death. In other words, he has offered no reliable ground upon which Rezulin may be "ruled in" as a plausible cause of the cirrhosis.