**In re XEROX CORPORATION SECURITIES LITIGATION.**

Civil Action No. 3:99CV02374 (AWT).

United States District Court,
D. Connecticut.

Sept. 30, 2010.

Brad N. Friedman, Joshua H. Vinik, Milberg LLP, Jason D'Agnenica, Mark Levine, Jules Brody, Stull, Stull, & Brody, Jeffrey D. Lerner, Keith M. Fleischman, Stanley D. Bernstein, Jeffrey D. Lerner, Bernstein Liebhard LLP, Neil Fraser, Ted Swiecichowski, Milberg, Weiss, Bershad, Hynes & Lerach, J. Wesley Earnhardt, Kevin J. Orsini, Rachel G. Skaistis, Sandra C. Goldstein, Cravath, Swaine & Moore, LLP, New York, NY, David A. Slossberg, J. Daniel Sagarin, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT, Nancy A. Kulesa, Andrew M. Schatz, Izard Nobel, LLP, Hartford, CT, Ivy Thomas McKinney, Norwalk, CT, for Plaintiffs.

Alfred U. Pavlis, Finn Dixon & Herling, Terence J. Gallagher, III, Jones Garneau LLP, Thomas D. Goldberg, Day Pitney LLP, Stamford, CT, Thomas J. Murphy, Cowdery, Ecker & Murphy, Hartford, CT, Elizabeth K. Canizares, John A. Valentine,

John A. Valentine, Wilmer Cutler Pickering Hale & Dorr–LLP, Washington, DC, Seth M. Kean, Tai H. Park, Panagiotis Katsambas, Shearman & Sterling, New York, NY, for Defendants.

## RULING ON LEAD PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF PROFESSOR DAVID DENIS

ALVIN W. THOMPSON, District Judge.

For the reasons set forth below, the Motion to Exclude the Expert Report and Testimony of David Denis is being denied.

## I. BACKGROUND

The court assumes familiarity with the factual background of the case. *See In re Xerox Corp. Sec. Litig.*, 165 F.Supp.2d 208 (D.Conn.2001). In brief, as alleged in the Amended Consolidated Class Action Complaint (Doc. No. 42), Xerox Corporation ("Xerox") is purported to have misrepresented the impact of a reorganization of its Customer Business Organization (the "CBO Reorganization"), which was part of a worldwide restructuring by Xerox in 1998 (the "Restructuring"), thereby artificially inflating the price of Xerox common stock. The plaintiffs contend that problems created by the CBO Reorganization largely negated the benefits resulting from the Restructuring.

Professor David Denis ("Prof. Denis") is the Burton D. Morgan Chair of Private Enterprise at the Krannert School of Management, Purdue University. (*See* Expert Report of David Denis, Ph.D., Feb. 8, 2008 (Doc. No. 387, Ex. A) (the "Denis Rpt.") at 2.) Prof. Denis has served as a consultant to organizations in the public and private sectors on various aspects of financial markets and securities, and has written a book, taught courses, and reviewed and edited articles about corporate restructuring. (*See* Denis Rpt. at 2–3.)

Prof. Denis has been asked to provide general background on the reasons for and the consequences of operational restructurings undertaken by large corporations; to determine whether Xerox's stated objectives for the Restructuring were consistent with norms for other firms conducting operational restructurings; to assess whether it is unusual for individual components of a restructuring plan to encounter difficulties of the type and magnitude encountered in the CBO Reorganization, as alleged by the plaintiffs; to measure Xerox's operating performance in the year of and the year following the initiation of the Restructuring, after making certain adjustments, and then compare Xerox's performance during these two years to the operating performance in the year of and the year following the initiation of similar restructurings undertaken by other large companies between 1990 and 1998; and to comment on the expert report of Lee Buchwald.

The plaintiffs contend that Prof. Denis's analysis does not satisfy the requirements for admissibility because his methodology is unreliable, and his opinions and conclusions are unrelated to any issue in the case and thus the probative value of his study is outweighed by the prejudicial effect.[1]

---

**1.** In a footnote, the plaintiffs also state that Prof. Denis should not be permitted to testify concerning Lee Buchwald's report. Prof. Denis's testimony is being offered to show deficiencies in Buchwald's reasoning and methodology. "Courts have often allowed expert testimony for the sole purpose of critiquing and thereby helping to explain the work of an expert witness retained by another party." *In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2003 WL 1610775, at *20 (S.D.N.Y. March 26, 2003). In addition, the empirical study responds directly to Buchwald's proffered opinions on the extent to which the CBO Reorganization had negative impacts on Xerox's operations.

## II. *LEGAL STANDARD*

"Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court...."

Fed.R.Evid. 104(a). "Under [Rule 104], the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed.R.Evid. 702 advisory committee's note, 2000 Amendments (citing *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n. 10, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (citing *Bourjaily* for the proposition that "[p]reliminary questions concerning the qualification of a person to be a witness ... should be established by a preponderance of proof.").

Federal Rule of Evidence 702 sets forth the standard to be used by the court in evaluating the admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

▮ In *Daubert*, the Supreme Court held that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597, 113 S.Ct. 2786. With respect to reliability, the Supreme Court identified four factors that, while not defin-

itive, are ones a district court might consider: "whether a theory or technique has been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." *Ruggiero v. Warner-Lambert*, 424 F.3d 249, 253 (2d Cir.2005) (citing *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir.2005)). Expert testimony is relevant only if it will assist the jury. *See Hill v. City of New York*, No. 03–CV–1283 (ARR)(KAM), 2007 WL 1989261, at *5 (E.D.N.Y. July 5, 2007). Expert testimony is not relevant if it is directed towards lay matters that the jury can understand on its own. *See Rieger v. Orlor, Inc.*, 427 F.Supp.2d 99, 103 (D.Conn. 2006).

▮ Whether the expert bases testimony on professional studies or personal experience, he must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In *Kumho*, the Court emphasized the relevance/reliability standard in determining the admissibility of expert testimony, stating that Rule 702 "establishes a standard of evidentiary reliability ... requir[ing] a valid connection to the pertinent inquiry as a precondition to admissibility ... [and] a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 149, 119 S.Ct. 1167 (internal quotations and citations omitted).

▮ A court must undertake "a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand. A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per*

*se* inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir.2002)(internal citations omitted). The *Daubert* Court "expressed its faith in the power of the adversary system to test shaky but admissible evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995) (internal citation and quotation omitted). But "[w]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos, 303 F.3d at 266.

The Second Circuit has noted "the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely v. City of New York*, 414 F.3d at 397 (citing *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786). Rule 403 provides that evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading a jury." Fed. R.Evid. 403.

## III. *DISCUSSION*

### A. Whether Prof. Denis's Methodology is Unreliable

The plaintiffs contend that Prof. Denis's methodology is arbitrary and unscientific because he compares companies on the basis of their year-end adjusted operating income for the year in which the restructuring charge was recorded, regardless of when in that year, if at all, restructuring-related activities began. The plaintiffs contend that Prof. Denis's failure to determine and state when each of the companies took their respective restructuring charges and when restructuring-related activities were commenced renders his study inadmissible. In addition, the plaintiffs contend that Prof. Denis's decision to build his analysis around the calendar year in which a restructuring charge was taken is arbitrary, unscientific and unjustified.

Prof. Denis testified that he sought to identify "a common standard" for the commencement of restructuring-related activities that could be applied evenly "across all the events, so each event [would be] treated the same way in an objective manner." (David Denis Deposition, April 15, 2008 (Doc. No. 387, Ex. B) ("Denis Dep.") at 118:3–16.) He chose to use the year the benchmark companies booked their special items charges as the starting point for his analysis because researchers "are not generally privy to ... internal workings" of the companies they study. (Denis Dep. at 118:5–7.) Without such information, researchers, including Prof. Denis, could not determine exactly when the restructuring-related activities commenced. The defendants cite to an article, Lori Holder–Webb, Thomas Lopez & Philip Regier, The Performance Consequences of Operational Restructurings, 25 Rev. Quantitative Fin. & Acct. 319, 326–29 (2005), in support of their contention that academics who study corporate restructurings take the approach taken by Prof. Denis, and the plaintiffs have not rebutted that contention. In addition, the public filings on which the plaintiffs rely do not specify when restructuring-related activities for the benchmark companies they highlight commenced, but instead only suggest when the restructuring was officially implemented or when the charge was taken.

■ Further, while the plaintiffs attack Prof. Denis's report on the basis that some of the companies Prof. Denis analyzed

were not comparable to Xerox for purposes of making a comparative study of restructuring, a "bare allegation … that … comparators are dissimilar, without more, does not suffice to undermine [the expert's] analysis." *See Alfa Corp. v. OAO Alfa Bank,* 475 F.Supp.2d 357, 367 (S.D.N.Y.2007). "The selection of comparators will seldom approach the Utopian ideal of identifying the perfect clone and thus such criticisms go more to the weight afforded to [the expert's] analysis than to its admissibility." *Id.* (internal quotation marks omitted). Similarly, here, the plaintiffs' objection goes to weight, not admissibility.

█ The plaintiffs also argue that Prof. Denis did not follow his own criteria for benchmark companies, i.e. booking at least $800 million in special items charges related to operational restructuring, because he included companies as to which that criterion was not satisfied. However, in making this argument, the plaintiffs ignore the special items charges that were not explicitly attributed to a restructuring by the company in question but in Prof. Denis's judgment were related to restructuring based on his review of relevant public filings for discussions of typical restructuring-related activities such as "asset write-downs or write-offs, employee layoffs, divestitures, consolidations of operations, and plant closings." (Denis Rpt. at 8 (citing Thomas Lopez, *Evidence on the Incremental Information Contained in the Components of Restructuring Charges,* 29 J. Bus. & Fin. Accounting 613, 617 (2002)).) Such a methodology appears reliable and the plaintiffs have not demonstrated otherwise. The plaintiffs have presented at most "a simple disagreement of opinion" on how an expert should consider certain factors. *In re Blech Sec. Litig.,* 2003 WL 1610775, at *25.

█ The plaintiffs further argue that Prof. Denis's study is flawed because he did not set asset limits on the benchmark companies for his comparative study. However, Prof. Denis explained why no asset limit was necessary. He testified that he was not "aware of any evidence that firms of significantly greater size [than Xerox] have different experiences" during their restructurings. (Denis Dep. at 111:4–12.) The plaintiffs offer no evidence to the contrary, nor do they effectively rebut the defendants' analysis that the inclusion of companies that had relatively smaller restructurings as a percentage of total assets than Xerox reinforced the overall result of Prof. Denis's study, as opposed to introducing a bias in favor of Xerox. There is no indication here that the absence of an asset limit renders Prof. Denis's expert report unreliable or unhelpful to the trier of fact.

The plaintiffs argue that academic authority cited by Prof. Denis suggests that studies concerning corporate operational restructuring should be conducted over a significantly longer period of time than the time frame employed by Prof. Denis. However, Prof. Denis explained: "The time frame that is being analyzed in any study is governed by the question that the researcher is attempting to address. In this case, [the] time period that I looked at spans the [C]lass [P]eriod, so therefore it was the relevant time period to analyze." (Denis Dep. at 84:10–15.) The plaintiffs do not explain how choosing a time frame that correlates to the years at issue in the case is arbitrary or an error.

The plaintiffs also make an argument that Prof. Denis's statement that the "CBO [R]eorganization was a relatively small piece of the total restructuring effort" (Denis Rpt. at 13) is inconsistent with other statements in his report about the CBO Reorganization. Even if the plaintiffs are correct, this is not a basis for excluding his report or testimony.

## B. Probative Value; Prejudice

 The plaintiffs argue that Prof. Denis's opinions on operational restructurings in general and Xerox's operational restructuring in particular are not related to the key issue in the case, namely whether the defendants made materially false and misleading statements as alleged by the plaintiffs. However, the plaintiffs contend that the CBO Reorganization had a material negative impact on Xerox's operations and there were materially false and misleading statements about that fact during the Class Period. Prof. Denis's report, and specifically his analysis of comparable restructurings, speaks to the materiality of the alleged misstatements or omissions, an essential element of the plaintiffs' claim. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 808 (2d Cir.1996) (stating that to prevail on a Section 10(b) and Rule 10b–5 claim, a plaintiff must establish a false statement or omission of a material fact). In addition, Prof. Denis's testimony will provide the jury with background and context about an area with which jurors are not usually familiar, i.e. operational restructurings. As such, Prof. Denis's report and testimony cannot be said to have "zero probative value," as the plaintiffs contend.

The plaintiffs argument that permitting Prof. Denis to testify would be prejudicial to the class is based on the premise that his report and testimony are irrelevant. However, as discussed above, the court concludes that Prof. Denis's report and testimony are relevant. Finally, even if the class was prejudiced by the admission of Prof. Denis's testimony, the court concludes that the "probative value" of that testimony is not "substantially outweighed by the danger of unfair prejudice ...," Fed.R.Evid. 403, because there is no unfair prejudice, and to the extent there is a concern about the jury being confused, a limiting instruction can be given. *See AMW Materials Testing, Inc. v. Town of Babylon,* 584 F.3d 436, 457 (2d Cir. 2009)("The law recognizes a strong presumption that juries follow such limiting instructions unless there is an overwhelming probability of their inability to do so.").

## IV. CONCLUSION

For the reasons set forth above, the Motion to Exclude the Expert Report and Testimony of David Denis (Doc. No. 387) is hereby DENIED.

It is so ordered.